Smith, J.
The question now submitted to us, is one between Pedretti & Sons and the Art Museum, as to the distribution of the proceeds of the sale of certain real estate lately owned by ¥m. Stichtenoth, Sen., but which has been sold in this case for the payment of the liens thereon. The material facts shown by the record, briefly stated, are these:
Pedretti & Sons hada written contract with,Stichtenoth, the owner of the real estate sold, for furnishing the material and doing the work of frescoeing the walls and ceilings of the house which Stichtenoth was erecting thereon. The contract price was $1,250. The work was commenced March 19, 1887, and continued until May 21st of the same year, when Stichtenoth requested the workmen to suspend it so that the inlaid floor might be put down, and accordingly they went away, leaving their material, etc., in the house, expecting and intending soon to return and finish the job.
On the 17th day of May, 1887, and during the progress of this work, the Art Museum took a mortgage from Stichtenoth on the real estate on which the building was being erected, to secure a loan of money then made, which on the same day was left for record.
The materials which had been left in the house by Pedretti •on May 21st, remained there until about June 1st, when they were taken away, as they were needed elsewhere. In the latter part of June, Pedretti sent two men, with mixed paint and other materials, to the house of Stichtenoth to finish the job. At that time there remained to be doné *518 on the contract,- work to the amount of about $25.00 but the men were not allowed to do any work, but were informed that they could do so in the course of two or three weeks. Men and materials were sent out in the same way at least once every month, until the latter part of December, 1887, at a cost and expense to Pedretti & Sons of about $25.00. About December 28, 1,887, for the first time, they were notified by Stichtenoth that they would not be allowed to complete their contract. On the former occasions they wei'e simply directed to defer their work.
On the 20th of September, 1887, Pedretti & Sons attempted to take out a mechanic’s lien on the house and lot in question. It was in due form, and was then filed, and if the description of the property had been correct, it would have been a lien on the same, superior to that of the Art Museum. In it, they set out the contract as made — the price to be paid for the entire work, and the amount that had been paid thereon, and the balance that was due in the sum of $375. But by mistake probably, it did not describe the ground or lot on which the house, or cover any of the real estate embraced in the mortgage of the Art Museum, and if this was the only lien claimed by Pedretti on the property, we are of the opinion that it can not be corrected or reformed, as pi’ayed for, and that the mortgage should have priority.
But on January 9, 1888, another lien was filed by Pedretti, substantially like the first, except that it correctly described the real estate on which the lien was sought, and as this was filed within a few days after the contract was broken by the refusal of Stichtenoth to allow, it to .be completed, if what was done by Pedretti in the way. of preparing paints and other materials to be used in finishing his job, and the sending it to the house by the workmen who were to do so, was a performance of labor or the furnishing materials for the construction of the building, they thereby obtained a lien on the property, superior to that of the mortgage of the Art Museum, unless the *519 filing by them of the paper of September 20, 1887, operated by way of estopped or otherwise, to deprive them of the right to consider the contract with Stichtenoth as still in force, and as against either Stichtenoth or the Art Museiim, to complete the same, and to file a lien within four months from the time it was actually completed, or the contract wrongfully put an end to by Stichtenoth, the owner.
The question is not free from doubt of difficulty, but our conclusion is, that what was done by Pedretti after May 21, 1887, and down to December 28, 1887, in the way of preparing and sending men and materials to this house to complete the work, was done in pursuance of the' agreement, and that where the contract of a mechanic is so wrongfully put an end to by the owner of the property, where the former had prepared and furnished materials to carry it out, and has such materials and workmen there to do it, that he may, as against such owner, acquire a lien on the property, within four months from the time the contract is terminated, though he may not have done any other work on the building, or furnished materials which actually went into -it, within the four months next preceding the filing of such lien.
It would certainly be most inequitable and unjust, if a mechanic who has done a large amount of work on, and furnished material for a building, for which he has not received payment, and who, at the request of the owner, suspends work thereon for more than four months, and who has prepared his materials and taken them to the house, but is not allowed to complete the work, should be deprived of his right under this statute to secure his claim by a lien. Sueh a construction of the statute should not be made if it can fairly be avoided, and we think such is not the law. And if the lien so taken is good as against the owner, we think it is also good as against a mortgage taken while the work was in progress, unless something has been done by the lien holder which estops him from relying upon it, and makes it inequitable for him to do so.
*520 2nd. Did the action of Pedretti in filing the papers of-September 20, 1887, purporting to seek a lien on other property than that mortgaged to the Art Museum, have this effect or prevent him from acquiring a valid lien on the right property to secure the same debt ?
It must be remembered that the mortgage onj the Art Museum was taken while the work of Pedretti under his contract was in progress, and that whatever lien was thereafter legally perfected by Pedretti, was superior to the lien of the mortgage, and that the mortgage was given before the first lien was filed. What might be the status of the parties,and the legal rights of the Art Museum against Pedretti, if the first paper had been on file when the mortgage was executed, is not the •question here. As the land covered by the mortgage was not described in the paper of September 20, it is doubtful if it would be notice, actual or constructive, to persons thereafter ■acquiring liens on this property of the owner. It may be, that if before this mortgage was taken, this paper of September 20 'had been filed, and there wras enough in it to show that he was taking a lien on property described therein to secure the contract price for work on this house, that Pedretti would not ^afterwards be allowed to file a lien on the property mortgaged. That is not this case, and it is unnecessary to consider that 'question. It was not filed until after the mortgage was left for record. The Art Museum did nothing on the faith of • such paper. Its claim, as has been said, was subject to any valid lien on the property mortgaged, afterwards put upon the property by Pedretti to secure his claims under this contract. And we see no reason to hold that if the work contracted to he done, was not really completed until December, 1887, or the contract put an end to under the circumstances found in ■this case, that the mere filing of a paper whereby Pedretti ■sought t'o obtain a lien thereon, before the work was completed or the contract put an end to, should prevent him from taking out a valid lien within four months from that •time, or estop him from asserting it. against this mortgage. *521 Suppose that Pedretti a few days after the filing of the-, paper of September 20, but within four months from May 21, 1887, had discovered the mistake in the description of" the land, could he not at once have filed another which, would have been valid if within the four months? We think that this is so, and that it would have been good against both the owner and the mortgagee. And the same in our judgment is the ease if the second lien was filed within four months after the last work was done, or material furnish-, ed, as we have found to be the case.
O. P. Cobb, for plaintiff in error.
Geo. Hoadly, Jr., for defendant in error.
We think the court erred in refusing to grant the motion for new trial, and the judgment will be reversed, and the cause-remanded for a new trial.