GRANITE IMPROVEMENT COMPANY *v.* O'HAVER.

[No. 12,851.   Filed May 20, 1927.   Rehearing denied October 14, 1927.   Transfer denied July 18, 1928.]

*Webster V. Moffett* and *Pickens, Davidson, Gause & Pickens,* for appellant.

*Allen G. Pate* and *Walter F. Wood,* for appellee.

NICHOLS, J.—Action by appellee to foreclose a lien upon real estate owned by appellant, for materials ordered by a third party, furnished by appellee, and used in repairing and improving a mine located on appellant's real estate.

The issues were formed upon a complaint in two paragraphs, to which appellant answered with a general denial.

Appellant and the Vandalia Coal Company were defendants. The cause was dismissed as to the Vandalia Coal Company.

There was a general finding for appellee, and a judgment that appellee recover of appellant the sum of $1,723.32 and costs, and that appellee held a lien on the real estate of appellant for the same, and such lien was ordered foreclosed.

The error relied upon for reversal is the court's action in overruling appellant's motion for a new trial, under which appellant presents that the decision of the court is not sustained by sufficient evidence, and is contrary to law.

The only evidence in this case consisted of a stipulation of facts by the parties, and which was introduced in evidence, which facts, so far as here involved, are that the coal mine involved, known as Vandalia Coal Company's Mine No. 16, is situate on real estate belonging to appellant in Sullivan county, Indiana, and which real estate was owned by it at all times mentioned in the complaint.

That appellee sold and furnished timbers, lumber, props and other materials to said mine, for the amount and for the value as set forth in the complaint herein, in

February, March and April, 1925. That said timbers, lumber, props and other materials were ordered by and delivered to the Vandalia Coal Company at said mine No. 16, and was ordered by said company with the intention of being used for propping and supporting new entries and new rooms, and repairing old entries and old rooms, and in the operation and permanent improvement of said mine, and that sixty-five per cent. in value of said timbers, lumber, props and other materials was used for said purpose in said operation and permanent improvement of said mine, and that same was necessary in the operation, permanent improvement and repair. thereof. That the remaining thirty-five per cent. in value of said materials was not used in said mine, but was placed in stacks at said mine for the purpose of being used in said mine, and was in said stacks unused at the time that said mine was turned over to appellant by the Vandalia Coal Company. That the amount claimed by appellee as being due him and unpaid, as set forth in the complaint, is correct, if appellant is liable therefor, and the same has not been paid. That appellee has filed a proper notice of lien within the required time. That on April 12, 1916, appellant owned said real estate in fee simple, and on said date appellant entered into a certain written contract and agreement with the Vandalia Coal Company, which contract is set out in full in the record and appellant's brief, covering several pages of each. We give the substance of such part only as concerns the questions in this appeal. The contract provided that appellant should sell to the coal company a tract or tracts of coal, containing in the aggregate 1,500 acres, and having thereon a new and fully equipped and developed coal mine or shaft, situate in Greene and Sullivan counties, or one of them, in the State of Indiana, setting out the method of designating the same. As

soon as practicable after such designation, the coal company should furnish to such engineer as might be designated by the improvement company in writing general plans showing the location, construction, equipment and development of a new mine for the operation of the said tract of coal, or, in case of more than one tract, for the operation of the tract having the greatest acreage, and the coal company should, as the agent for the improvement company, at once proceed with, and, expeditiously complete, the construction, equipment and development of the said mine. Appellant should acquire such surface rights and other interest in land, in case it did not already own the same, as should be necessary to the construction of said mine and the reasonable operation thereof. Appellant should make payment of the cost of said work not to exceed, however, the sum of $250,000 in the manner following: On or before the tenth day of each calendar month, the coal company should render to appellant a statement showing the amounts actually expended by the coal company up to and including the last day of the preceding calendar month and for what property or upon what work, the said statements to be itemized to such extent as appellant's engineer should from time to time direct. On or before the twenty-fifth day of said calendar month, appellant's engineer should approve said statement to the extent that he should be satisfied that the amounts of money stated therein had been actually expended by the coal company in the performance of said work, and, thereupon, appellant should pay to the coal company the amounts so approved by appellant's engineer. When the amounts of money expended by appellant in the construction, equipment and development of said mine should aggregate $250,000, or when the construction, equipment and development of said mine should have progressed, at a cost of less than $250,000, to a point that, in the opinion of the coal

company, the said mine could be economically operated in the production of coal, appellant should duly convey, by a good and sufficient deed of general warranty, to the coal company, the tract or tracts of coal, including all mining rights incident thereto and improvements and equipment thereon or therein. Contemporaneously with the delivery of said deed to the coal company, it should duly execute, acknowledge and deliver to such trustee as might be designated by the improvement company a mortgage covering all of the properties then conveyed to it by appellant and all improvements, equipment and appliances for the mining or production of coal, then existing thereon or therein or thereafter to be placed thereon or therein, to secure an issue of coupon bonds of the coal company in the aggregate principal sum of $800,000 to be dated April 1, 1916 (or such subsequent date as appellant company might select, to mature on April 1, 1950). We do not need to set out the details of the proposed mortgage transaction.

That said coal mine referred to heretofore and known as Vandalia Coal Company's Mine No. 16, is situated upon the real estate described in the agreement. That the $250,000 mentioned in said agreement was furnished by appellant and was used by the Vandalia Coal Company for the purposes stipulated in said contract, and said mine was known as Vandalia Coal Company's Mine No. 16. That since April 12, 1915, there has been no other or different contract entered into by appellant with the Vandalia Coal Company or any other person or corporation, relating to said real estate or to said mine. That before the execution of said agreement above set out in substance, to wit, on April 20, 1915, the Vandalia Coal Company, by agreement in writing, leased said mine to the Vigo Coal Products Company, which lease was duly recorded in the office of the recorder of Sullivan county, Indiana, on August 11, 1915; that said Vigo

Coal Products Company took possession of said mine No. 16 and said mining property under said lease and contract between the Vandalia Coal Company and the Vigo Coal Products Company, employed the Vandalia Coal Company as its agent to operate said mine, and operated the same under the terms thereof, by said agent, and said Vigo Coal Products Company, by and through said agent, was in possession of said mine No. 16 under said lease and agreement with the Vandalia Coal Company, and by and through said agent, was operating the same thereunder at the time appellee furnished the materials sued for. That the coal mined by the Vigo Coal Products Company, through its said agent, was sold by the Vigo Coal Products Company, and the money received therefor was paid to the Union Trust Company of Pittsburgh, which company had a mortgage on other property of the Vandalia company, and appellant received no part of said coal or money.

That the deed provided for in the contract between appellant and the Vandalia Coal Company was never executed and no demand was ever made upon appellant for the execution thereof; that the bonds and mortgage referred to in said contract were never executed by the Vandalia Coal Company; that nothing has ever been paid appellant under said contract by the Vandalia Coal Company or the Vigo Coal Products Company or by any other person or corporation, and appellant has never received any coal mined from said real estate, and has not received any rental or royalties on any coal mined therefrom. That since 1918 said mine has been operated by either the Vigo Coal Products Company or the Vandalia Coal Company. That appellant had knowledge during said time that said mine was being operated, but had no knowledge of the agreement between the Vandalia Coal Company and the Vigo Coal Products Company heretofore referred to, and knows

nothing of the arrangement or contract between said companies or the manner of operating the same. That at the time the plaintiff furnished the materials sued for, the Vandalia Coal Company was insolvent and has since remained insolvent, and all its property is now in the hands of receivers; that on the —— day of May, 1925, the Vandalia company and the Vigo Coal Products Company abandoned said mine, and the real estate upon which the same is located, and since said day the same has been, and now is, in the possession of appellant, and neither the Vandalia Coal Company nor the Vigo Coal Products Company claims any interest in said mine or said real estate.

It appears that under the terms of the contract appellant was to advance to the Vandalia Coal Company $250,000 to be used in opening up and equipping a new mine on appellant's land, the Vandalia company agreeing to expend this money for said purpose under the direction of appellant, as its agent, in opening up and equipping the mine. This work was to be done as expeditiously as possible, and when completed the Vandalia company was to purchase the land and to execute bonds secured by a mortgage upon the property. The $250,000 was furnished by appellant and expended by the Vandalia company, and the mine was thereafter, from the year 1918 to 1925, in operation, the Vandalia company having leased the mine to the Vigo Coal Products Company and that company, in turn, having employed the Vandalia company to operate the mine as its agent. While it was being so operated, the material which is involved in this controversy was purchased by the Vandalia Company. It is clear that in such purchase the Vandalia company must have been acting as the agent of the Vigo Coal Products Company. Had it understood that at the time it was acting as the agent of appellant, and had such been the fact, it would

not and it could not have leased the property to the Vigo company. It had no authority so to do under its agency with appellant. Appellant had no knowledge of the relation existing between the Vandalia company and the Vigo company, and did not at any time receive any rent or royalty from the mine, the proceeds thereof having been paid to the Union Trust Company of Pittsburgh, which held a mortgage on other properties of the Vandalia company. It is to be noted that the Vandalia company and the Vigo company had been *operating* the mine since 1918, for a period of seven years, not completing the construction, equipment and development thereof. We hold that the Vandalia company was only the agent of appellant for the purpose of constructing and equipping the new mine provided for in the contract, using for that purpose the $250,000 furnished by appellant. While it appears that appellant knew that the mine was being operated, it does not appear by the stipulation of facts that it knew anything at all of the relation between the Vandalia company and the Vigo company nor of the manner of the operation as between them. It is true that no deed was executed by appellant to the Vandalia company, and it is also true that the mortgage to be executed by the Vandalia company contemporaneously with the delivery of the deed had not been executed. The stipulation of facts does not state the reason for this delay, but it does not follow that, after the construction, development and equipment of the mine, using for that purpose appellant's money, the agency of the Vandalia company thereafter continued for a period of seven years for an entirely different purpose, that of operating the mine. It must be kept in mind that the Vandalia company had been put in possession of the property as a purchaser thereof, with a provision that, after certain things had been accomplished, it should receive a deed therefor. Having

accomplished these things, and thereafter having failed to close the deal for any reason, its rights thereafter, except as to its right to require that the deal be closed, were similar to those of tenant at will. 16 R. C. L. 546; *Barrell* v. *Britton* (1923), 244 Mass. 273, 138 N. E. 579. And, under such circumstances, a lien for labor or material can only attach to such interest as the operator has. *Hopkins* v. *Hudson* (1886), 107 Ind. 191, 8 N. E. 91.

The Vandalia company, being in possession of the land under an agreement to purchase, even if appellant had known of the purchase of the material here involved and of its use in the mine, such knowledge, with only a passive acquiescence, would not be sufficient to charge the land with a mechanic's lien therefor. *Robert Hixson Lbr. Co.* v. *Rowe* (1925), 83 Ind. App. 508, 149 N. E. 92; *Peoples Savings, etc., Assn.* v. *Spears* (1888), 115 Ind. 297, 17 N. E. 570; *Adams* v. *Buhler* (1888), 116 Ind. 100, 18 N. E. 269; *Holland* v. *Farrier* (1921), 75 Ind. App. 368, 130 N. E. 823. As is said in the last case cited, there are cases, however, holding that where the vendor has been active and instrumental in having the improvements made, the lien will attach to the real estate where the vendee failed to carry out his contract of purchase. *Rader* v. *A. J. Barrett & Co.* (1915), 59 Ind. App. 27, 108 N. E. 883, and *Pierce* v. *Blair* (1925), 196 Ind. 710, 149 N. E. 563, cases cited by appellee, belong to this class. See, also, *Mancourt* v. *Wissel* (1925), 83 Ind. App. 313, 146 N. E. 423, cited by appellee, which announces the same principle. But, in this case, appellant had nothing whatever to do with the operation of the mine, had made no contract with reference thereto, and received no part of the proceeds of the operation, the same being paid to the Union Trust Company, mortgagee of other lands owned by the Vandalia company. Under such

circumstances, it cannot be held liable for debts incurred, either for material or labor, in such operation, nor can its real estate be subjected to a lien therefor.

The judgment is reversed.

Dausman, J., absent.