J. LEROY POTTER, ROBERT F. POTTER, POTTER MATERIAL SERVICE, INC. *v.* JAMES CLINE, D/B/A CLINE'S ELECTRIC SERVICE.

[No. 2-1172A117. Filed August 29, 1974. Rehearing denied October 10, 1974.]

*Richard H. Crokin,* of Indianapolis, for appellants.

*Chalmer Schlosser, Jr., Schlosser, White & Schlosser,* of Indianapolis, for appellee.

WHITE, J.—This is an appeal from a judgment that appellee James Cline (Cline), an electrical contractor, have and recover the sum of $3,934.50 and costs from all three appellants, J. LeRoy Potter and Robert F. Potter (the Potters), and Potter Material Service, Inc. (Corporation), and that certain described real estate be sold (by virtue of a mechanic's lien) to satisfy the judgment. Because there is no evidence concerning the Potters except that their names appear on Cline's notice of intention to hold a mechanic's lien, we reverse

as to them. As to the Corporation, we affirm, subject to certain modifications.

Refusing to weigh the evidence or to resolve questions of credibility and looking only to the evidence and reasonable inferences therefrom which support the trial court's judgment, we find the facts established by the evidence to be these:[1]

The Corporation, at all times pertinent to Cline's claim, operated a building materials business in a building or "plant" located at 3515 East Washington Street, Indianapolis, Marion County, Indiana, on land described in the trial court's judgment and in the notice of intention to hold mechanic's lien filed by Cline in the Marion County Recorder's office on December 4, 1969. The Corporation was, at all such times, *an* owner of that real estate within the meaning of the mechanic's lien statute[2] but there is no evidence of the precise nature of its estate or interest therein.[3]

At all times pertinent Cline was a duly licensed electrician engaged in business in Indianapolis as an electrical contractor. In 1968 Cline commenced to do electrical work for the Corporation. His first job was to "rework a warehouse" for $195.00 and he was paid in full. His second job was to wire an office building for the superintendent of the plant for a contract

1. *Estate of Barnett* (1974), 159 Ind. App. 491, 307 N.E.2d 490, 495, 41 Ind. Dec. 87, 96.

2. Ind. Ann. Stat. §§ 32-8-3-1 *et seq.* (Burns Code Ed. 1973).

3. Cline's pre-trial discovery interrogatory asked Corporation "what interest . . . [it] has in ownership or occupancy of the real estate . . . ." Corporation answered: "Conditional vendee of part of the described real estate". A subsequent pre-trial order to produce that contract for inspection and copying was responded to with an objection "that said conditional sale contract is not pertinent to Plaintiff's alleged cause of action. . . ." Cline's pre-trial motion for a summary or default judgment pursuant to Trial Rule 37 for failure to comply with the order to produce was set for hearing, but no hearing was ever held and no ruling on the motion was ever made. At the trial neither the interrogatory nor the answer was ever offered in evidence.

Although both parties speculate in their arguments on the lien-ability of a conditional vendee's interest, both contend that the answer is not in evidence. With that we agree.

The evidence of ownership which is in the record is at least minimally sufficient. It is discussed *infra*, under II.

price of $568.00 plus an extra of Twenty-four Dollars ($24.00) for a total of $592.00. That job was finished and Corporation was billed for it on or before December 18, 1968, but Cline was never paid for it.

In February of 1969 Cline was employed by Corporation to wire a conveyor system, or "batching" system, under an oral agreement that he would be paid for labor at the rate of $7.00 per man hour, and for materials at their cost to him plus twenty per cent. On or about March 6, 1969, he had substantially completed the rough-in work which had consumed 120 man hours of his own and his employees' labor, amounting to $840.00. By that time he had also purchased materials which, at cost plus twenty per cent, amount to $843.00. All of those materials had been delivered to the plant and installed except a 250 foot roll of "16-2 shielded cable". This was a special type of wire suggested by the manufacturer of the conveyor system to which to hang the tilt and probe switches. Cline's charge for that item was $58.00. At that time Cline had done substantially all the work he could do toward wiring the conveyors until guides for the tilt and probe switches were welded and installed. This was work Cline could not do, but which could have been done by qualified personnel in about a week.

At that time Cline submitted his itemized statement for labor and materials totaling $1,683.00 and left the plant awaiting a call to return and complete his wiring job after the tilt and probe switches were installed. He received no call until some nine months later when Mr. Ochstein, Corporation's vice-president, telephoned and asked him to return and complete the job. By that time two of Cline's three employees had left him and he had other work which prevented his immediate return. He offered to return and complete the job when he could get to it and also suggested another contractor, but Corporation wanted the work done immediately. The vice-president asked Cline to bring in the material he had left. On December 1, 1969, Cline delivered to him the roll of 16-2

shielded cable and also tabs and prints for the conveyor. Corporation thereafter employed "Cameron Electric" which completed wiring the conveyor. There is no evidence to rebut the presumption that the cable was installed in the conveyor system when the work was completed by Cameron Electric. *Kendall Lumber & Coal Company, Inc.* v. *Roman, et al.* (1950), 120 Ind. App. 368, 376, 91 N.E.2d 187.

On December 4, 1969, Cline filed his notice of intention to hold a mechanic's lien directed to "J. LeRoy Porter [sic] and Robert F. Porter [sic] (Owners), and Porter [sic] Material Services, Inc." The amount claimed therein is $2,275.00 which is the total of the $592.00 job completed on or before December 18, 1968, and the uncompleted job which followed it for which Cline's billing was $1,683.00.

There is no evidence concerning the Potters save and except the foregoing notice.

## I.

On these facts the first question which arises is whether the notice was filed "within sixty [60] days after performing such labor or furnishing such materials" as required by Ind. Ann. Stat. § 32-8-3-3 (Burns Code Ed., 1973) in order to perfect a mechanic's lien.

As to the $592.00 for labor performed and materials furnished on the job completed December 18, 1968, or earlier, there is no question but that the notice was too late. That work was performed, and those materials were furnished, under a separate contract. The two contracts cannot be tacked together so as to extend the time within which the notice may be filed, or to revive a right lost by lapse of time. *Kendallville Lumber Co.* v. *Adams* (1931), 93 Ind. App. 141, 150, 176 N.E. 555, 558; *St. Joseph's College* v. *Morrison, Inc.* (1973), 158 Ind. App. 272, 302 N.E.2d 865, 875, 39 Ind. Dec. 244, 259. The uncontradicted evidence is sufficient, however, to sustain a personal judgment against the Corporation in the principal sum of $592.00. (Interest and attorneys' fees are discussed *infra*.)

As to the conveyor wiring job the answer is not so simple.

Appellants contend that, because the wire delivered in December, 1969, had already been billed to the Corporation in March and no work had been done since that time, Cline's "lien rights" expired in June and the delivery of the wire did not "revive" those rights. *Ellis* v. *Auch* (1954), 124 Ind. App. 454, 460, 118 N.E.2d 809, 812, and *Miller Monuments, Inc.* v. *Asbestos Insulating & Roofing Co., Inc.* (1962), 134 Ind. App. 48, 55, 185 N.E.2d 533, 536, are cited and quoted.

Neither of those cases is of much help since the facts of neither are analogous to those at bar. In *Ellis, supra,* a written contract executed by the parties was the basis of the contractor's claim against the owner. The labor and materials called for by that contract were all furnished more than sixty days before the notice was filed. There was some evidence that some labor and materials were furnished within sixty days of the filing but no evidence that they were a part of the contract. A judgment for defendant on plaintiff's evidence was affirmed. In *Miller Monuments, supra,* the plaintiff had completed his contract in a good and workmanlike manner more than sixty days before the notice was filed. Defendant owner, however, contended it was not properly done and plaintiff did more work at defendant's request within the sixty day period. In holding that the notice was timely filed, the court said:

> "The facts found by the court do not show that the later work was done gratuitously or by virtue of a new contract. Appellant is estopped by its conduct, as shown by the special findings, from claiming that the work under the subcontract was completed before the doing of the additional work, and the mechanic's lien was therefore timely filed." (134 Ind. App. at 54.)

The court also quoted a Massachusetts case[4] which had said:

> " 'Work actually called for by the contract *or continuing employment, performed in good faith with the intention of completing the job,* . . . will permit the filing

4. *Peerless Unit Vent. Co.* v. *D'Amore Const. Co.* (1933), 283 Mass. 121, 124, 186 N.E. 280.

of the statement within sixty days after the doing of the last work.' " (Id. at 55.) [Emphasis by *Miller* court.]

Appellants treat that quotation as the rationale of the *Miller Monuments* decision and argue that because Cline was not delivering the 16-2 cable with intent to complete the job it does not extend the time for filing the notice.

Cline's appellee's brief also relies on *Miller Monuments, supra,* and on *W. P. Nelson Company* v. *Weyl* (1919), 71 Ind. App. 674, 125 N.E. 466, to support his argument that Corporation is estopped to claim the benefit of "its own delay in preparing the structure for finish wiring." Both cases do speak of estoppel, but on facts quite different from those at bar. In both cases the work contracted for had been completed but the owner-defendant had insisted that further corrective work was necessary. It was their request for the further work which estopped them from contending that it was not a part of the contract.

The case at bar differs from the cases cited in that the work contracted for by Cline was never completed by Cline. Much of appellants' argument is premised on the contention that Cline defaulted on his contract to do all the wiring of the conveyor; that he "quit and walked off the job". But the evidence most favorable to Cline would not sustain such a finding. In fact not even the Corporation's evidence by its Vice-President Ochstein would sustain a finding that Cline quit when he left in March or April. Ochstein did not dispute Cline's testimony that he left the job in March or April of 1969 to await recall when others had done the work necessary to permit the final hook-up, nor, that the call to Cline to return and complete the job was not made until within sixty days of the filing of the notice. If Cline had returned and completed the hook-up after that call and had filed his notice within sixty days after the completion there would have been no basis for contending that the work done, and materials furnished, prior to the interruption were not covered by the

lien. On the contrary, it would be fair to say that the Corporation would have been estopped to contend that the work done after the recall was done under a new contract and estopped to contend that the time had expired for filing a notice of lien for the prior work.

There is evidence sufficient to support the inference that Cline was always willing to complete the wiring of the conveyor or batching system and that he would have been able to do so promptly when called, had the call come within a reasonable time after he furnished the rough-in. And, further, that he was still willing to complete the job but was temporarily unable to do so immediately when called because he had other work in progress and had lost two-thirds of his help. His employment was thereupon terminated by the Corporation because it was not willing to wait until he was able to complete the work. All he was permitted to do toward completion was to bring in the special cable which he had already purchased for the job. This delivery, then, became the last act performed by him pursuant to his employment by the Corporation. His notice filed within sixty days after he was terminated was timely. *F. Pedretti & Sons* v. *Stichtenoth* (1892), 6 Ohio C.C.R. 516; *McCarthy* v. *Groff* (1892), 48 Minn. 325; *Lamoreaux* v. *Andersch* (1915), 128 Minn. 261, 150 N.W. 908.

## II.

Appellants contend, in substance, that the judgment foreclosing the mechanic's lien is not supported by sufficient evidence in that there is no evidence of ownership of the property or of the identity of the owner. This puts them in the rather strange position of objecting to something which, according to their own pleading, does not affect any property they own.

In their separate answers they have denied the Complaint's allegation that they are the owners of the real estate. That is tantamount to denying that they have any lienable interest in the real estate. One cannot understand how they can be harmed by a sale of real estate in which they have no interest. But the

vigor with which their attorney has resisted (and seeks here to reverse) establishment and foreclosure indicates that notwithstanding their disclaimer of ownership, at least one of appellants must own some interest which he is fearful may be conveyed or "clouded" by the sale ordered but which he assumes is not such an interest as makes him an "owner" within the meaning of the mechanic's lien statute. On no other basis can we assume good faith in the attorney's certificate, implied by virtue of Trial Rule 11(A), Indiana Rules of Procedure, from his signature of defendants' answer.[5] Counsel's argument in relation to the Corporation's admission (in answer to a pre-trial interrogatory) that it was a conditional vendee,

---

5. Trial Rule 8(B) in pertinent part reads:

"(B)   Defenses: Form of denials. A responsive pleading shall state in short and plain terms the pleader's defenses to each claim asserted and shall admit or controvert the averments set forth in the preceding pleading. If *in good faith* the pleader intends to deny all the averments in the preceding pleading, he may do so by general denial subject to the provisions of Rule 11. If he does not intend a general denial, he may

"(1)   specifically deny designated averments or paragraphs, or

"(2)   generally deny all averments except such designated averments and paragraphs as he expressly admits." (Our emphasis.)

In pertinent part TR. 11(A) reads:

"(A)   Parties represented by attorney. Every pleading or motion of a party represented by an attorney shall be signed by at least one [1] attorney of record in his individual name . . . . *The signature of an attorney constitutes a certificate by him* that he has read the pleadings; *that* to the best of his knowledge, information, and belief, *there is good ground to support it;* and that it is not interposed for delay. If a pleading or motion is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action."

The allegations of plaintiff's complaint are set forth in five rhetorical paragraphs. The three defendants are referred to throughout merely as "defendants" with no distinction or differentiation being made between them. All three defendants answered in one pleading, but the two individuals answered in the first legal paragraph and the Corporation in the second. Both answers were identical except for the pronoun "they" or "it". Each legal paragraph was in five rhetorical paragraphs, denying *seriatim* the allegations of the five rhetorical paragraphs of the complaint.

The "good practice" of a century and a half in which it was almost routine to deny everything in hope plaintiff would fail to prove an essential fact not in actual dispute, is not easily abandoned.

indicates appellants believe no one with less than a freehold interest is an "owner".

The statute itself belies the narrowness of that concept. Its section 2, Ind. Ann. Stat. § 32-8-3-2 (Burns Code Ed., 1973) reads:

> "32-8-3-2 [43-702]. Extent of lien.—The entire land upon which any such building, erection or other improvement is situated, including that portion not covered therewith, shall be subject to lien to the extent of all the right, title and interest owned therein by the owner thereof, for whose immediate use or benefit such labor was done or material furnished; and where the owner has only a leasehold interest, or the land is encumbered by mortgage, the lien, so far as concerns the buildings erected by said lienholder, is not impaired by forfeiture of the lease for rent or foreclosure of mortgage; but the same may be sold to satisfy the lien and [be] removed within ninety [90] [days] after the sale by the purchaser. [Acts 1909, ch. 116, § 2, p. 295.]"

As was said in *Fletcher Avenue Savings and Loan Association* v. *Roberts* (1934), 99 Ind. App. 391, 396, 188 N.E. 794, 796:

> "There is nothing in our mechanic's lien statutes which indicates that the word 'owner' was used in a narrow sense, meaning only owner of the fee; on the contrary the provision in section 9832, Burns R.S. 1926, § 43-702, Burns, 1933, § 10506, Baldwin's 1934, that 'the entire land . . . shall be subject to lien to the extent of all the *right, title* and *interest* owned therein by the owner thereof . . .' (our italics) indicates that the word 'owner' was used in a broader sense. If it was intended by the legislature to provide that only the holders of title in real estate could subject it to mechanic's liens, they should not have included the words 'right' and 'interest' in said provision as they did, because under such circumstances the words 'right' and 'interest' would be superfluous and not necessary to express the legislature's intention.

> "In construing statutes we must presume that the legislature intended each word used in the statute, to be necessary to express its intention, and we must regard such presumption until it forces us to an unreasonable construction of the statute, therefore we hold that the legislature intended to make not only the title subject to a mechanic's lien, but any right or interest, as well."

And in *Kendall Lumber & Coal Company, Inc.* v. *Roman* (1950), 120 Ind. App. 368, 375, 91 N.E.2d 187, 190:

"It is well settled that the interest of a purchaser of real estate under a contract of sale is subject to a mechanic's lien. 36 Am. Jur., p. 69, § 87, p. 68, § 84; 2 *Jones on Liens* (3rd Ed.), p. 437, § 1245; *Rusche* v. *Pittman* (1904), 34 Ind. App. 159, 162, 72 N.E. 473; *Krotz et al.* v. *A. R. Beck Lumber Company et al.* (1905), 34 Ind. App. 577, 589, 73 N.E. 273; *Granite Improvement Company* v. *O'Haver* (1928), 87 Ind. App. 655, 663, 156 N.E. 586 (Transfer denied); *Fletcher Avenue Savings & Loan Association* v. *Roberts et al.* (1934), 99 Ind. App. 391, 396, 188 N.E. 794 (Transfer denied)."

While contending that Corporation's answers to interrogatories are not in evidence because they were never offered nor read at the trial, the appellants nevertheless devote much of their argument to the effect of the answer (if it is held to be in evidence) in which Corporation admits that it is a conditional vendee of a part (not described) of the real estate described in the complaint and in the notice of intent to hold a lien. The argument seems to contend that a conditional vendee does not have a lienable interest. If it does so contend its only authority cited, *Woods* v. *Deckelbaum* (1963), 244 Ind. 260, 191 N.E.2d 101, 1 Ind. Dec. 517, does not support its position, nor does *Courtney* v. *Luce* (1936), 101 Ind. App. 622, 200 N.E. 501, quoted therein, although the loose and imprecise language of the *Courtney* opinion quoted out of context can be so interpreted. Both cases, and all their authorities, were concerned with the power, or want of power, of a conditional vendee or lessee to subject the interest of the vendor or lessor to a mechanic's lien for improvements made pursuant to a contract with only the vendee or lessee.

Inasmuch as there is absolutely no evidence in the record which even suggests that the Potters may be personally liable to Cline for any labor or material he furnished to the plant or that any conduct of theirs may have subjected to his lien any interest they may own in the real estate, it is of no consequence whether they do own a lienable interest or

whether the lien notice is any evidence of their ownership of such an interest.

This leaves the question whether there is sufficient evidence of the Corporation's ownership in the record to justify a judgment of foreclosure against it. The question implies that some evidence, or admission, that a defendant is an owner is essential to a judgment of foreclosure and there are several Indiana opinions which so state[6] but we know of none in which a judgment of foreclosure was reversed *solely* because there was insufficient evidence that defendant was an owner. And aside from the fact that it wastes judicial time and clutters records to foreclose against non-extant interests, we see no good reason for denying a plaintiff a lien foreclosure merely because he has failed to prove that the defendant against whom foreclosure is decreed owns a lienable interest. If, however, instead of a mere failure of proof, there is proof that no defendant before the court owns a lienable interest, and that the true owners (against whose interests a lien may or may not exist) are not before the court, it makes no sense to enter a judgment ordering sale of the real estate when the purchaser at such a sale obviously can acquire title to nothing.[7] But the entry of a sale order against a defendant whose ownership is neither

---

6. See *Littler* v. *Friend* (1906), 167 Ind. 36, 41, 78 N.E. 238; *Littler* v. *Robinson* (1906), 38 Ind. App. 104, 77 N.E. 1145.

7. Such was the situation in *Demma* v. *Forbes Lumber Co.* (1961), 133 Ind. App. 204, 178 N.E.2d 455, 181 N.E.2d 253, in which a judgment of the Probate Court of Marion County purporting to establish a mechanic's lien against real estate of a decedent was declared void because the Probate Court was without subject-matter jurisdiction of mechanic's lien foreclosures. In its opinion denying the petition for rehearing the court said:

"In an action to foreclose a mechanic's lien, the owners of the property, either legal or equitable, and all others who acquire any right, title or interest in said real estate prior to the time suit is commenced, are necessary parties in order for the court to have jurisdiction over the real parties in interest of the controversy. See *Krotz* v. *A. R. Beck Lumber Co.* (1905), 34 Ind. App. 577, 73 N.E. 273." (Id. at 220.)

The court then noted that "the only party defendant in the cause is the Executor . . . and the contractor," and that the executor had no title, that having vested immediately on death in the heirs.

proved or disproved cannot harm him if, in truth, he has no lienable interest. Nor will such an order harm the person or persons who do own lienable interests because all that can be sold at a foreclosure sale is the interest of the defendant, or defendants, against whom the order of sale has been decreed. The interest of persons against whom no judgment is rendered are not affected, no matter what the proof, or want of proof, of ownership may have been as to the defendants against whom judgment has been rendered.[8] The only peril in the sale of an unproven interest is to the purchaser. But evidence of defendant's ownership given in a mechanic's lien trial is little, if any, protection to the purchaser since titles can rarely be quieted in such actions. Trial Rule 69(F), which enables the court ordering sale to require a title opinion, or title insurance, provides the only means a court has to protect purchasers in such cases.

For the foregoing reasons we believe the following statement from *Willer* v. *Bergenthal* (1880), 50 Wis. 474, 7 N.W. 352, 354 (a mechanic's lien foreclosure), states what should be the Indiana rule:

> "We think the plaintiff was not required to prove the title of the appellant to the lot upon which the lien is claimed. The lien is enforced only upon the interest of the appellant therein, and should it transpire that the latter has no such interest, the plaintiff would take nothing by his judgment. That is a matter between the plaintiff and some possible adverse claimant of the lot, and does not concern the appellant. No reason is perceived for requiring proof of appellant's interest in the lot, in this action to foreclose a lien, which would not apply with equal force in actions to foreclose mortgages, where, as between mortgagor and mortgagee, no such proof is ever required."

Or, as restated in *Williams* v. *Lane* (1894), 87 Wis. 152, 58 N.W. 77, 78:

> "The plaintiffs are not required to prove the title of the defendant Lane, as the lien is enforced only against his interest, and, if he has no interest in the property, the plaintiffs will take no interest in the premises by the

8. *Krotz* v. *A. R. Beck Lumber Co.* (1905), 34 Ind. App. 577, 73 N.E. 273.

judgment; but that is a matter of no concern to the defendants, (Willer v. Bergenthal, 50 Wis. 479, 7 N.W. 352;) and no issue is made as to any title paramount to that of the defendant Lane, (Cook v. Goodyear, 79 Wis. 606, 48 N.W. 860.)"

But whatever need there may be to prove that the defendant is an "owner" was satisfied at the trial. That the Corporation is the owner is implicit in the testimony of every witness. Without conflict, the testimony of all witnesses supports the conclusion that the Corporation, through its officers and employees was in possession of the plant in which Cline installed the wiring and controlled, managed and improved it as reasonable business people would do only if they owned a substantial interest or estate therein. Corporation's possession and exercise of rights of ownership and performance of acts of dominion thus created a rebuttable presumption (which it did not attempt to rebut) that it was invested with some right or title in the premises. *Broadsword* v. *Kauer* (1954), 161 Ohio St. 524, 120 N.E.2d 111, 117, and authorities cited therein and in 29 Am. Jur. 2d 283, Evidence § 234, n. 20. Furthermore, Orville Lebo testified that he had worked in the plant for 46 years "under sundry owners" prior to his retirement, and "for Potter Material Service from when they bought the place". This evidence was sufficient prima facie proof of ownership and was in no wise questioned or refuted by any other evidence. *Merritt* v. *Pearson* (1881), 76 Ind. 44; *Littler* v. *Friend* (1906), 167 Ind. 36, 78 N.E. 238; *Littler* v. *Robinson* (1906), 38 Ind. App. 104, 77 N.E. 1145.

Cline, as his own witness, located the plant at 3515 East Washington Street, Indianapolis, (by his written statements of account which were offered in evidence by both plaintiff and defendants and by his oral testimony). No one disputed the location but there was no express evidence that the plant was located on the land described in the notice of intention to hold the lien and in the judgment. Appellant has made no mention here, and has raised no issue here, of the want of such evidence. This is a matter of which the trial court

could have taken judicial notice.[9] In the absence of actual notice that 3515 East Washington Street is not so located we will assume that facts within the trial court's judicial ken sufficient to convince him of the plant's location were also actually known to him.

Whether the corporation's interest is geographically co-extensive with the area described or whether it covers a smaller area is of no more importance than whether its interest is that of holder of the legal and equitable title to the fee simple absolute or of a lesser estate. No greater interest than it owns will be sold to satisfy the lien in any event, no matter the area or estate described in the order of sale, or in the sale deed. If some other person, or persons, own an interest in all or part of the real estate described, such interest will not be affected by the sale.[10]

### III.

What we have already said in part I hereof in deciding the issue of the timeliness of the mechanic's lien notice also serves to demonstrate that the Corporation is indebted to Cline in the sum of $592.00 for the wiring job completed December 18, 1968, and in the sum of $1,683.00 for the uncompleted conveyor wiring job on which his employment was terminated. The trial court's finding that there is due Cline from the Corporation the sum of $2,275.00 needs no further justification. The finding that three years interest at the rate of six percent is also due Cline from the Corporation appears to be authorized by the evidence pursuant to Ind. Ann. Stat. § 19-12-103 (Burns 1964 Repl.).[11] This adds $409.50,

9. *Allen* v. *Gilkison* (1921), 76 Ind. App. 233, 132 N.E. 12, and cases therein cited.

10. *Krotz* v. *A. R. Beck Lumber Co.* (1905), 34 Ind. App. 577, 73 N.E. 273.

11. See *Mann* v. *Schnarr* (1950), 228 Ind. 654, 671, 95 N.E. 2d 138. This 1879 statute, in force when the labor and materials were furnished and the bills therefore were rendered, was repealed and reenacted in substance, with the interest rate increased to eight per cent, effective October 1, 1971, by Ind. Acts 1971, P.L. 366, § 10(1)(e) and § 10(5), Ind. Ann. Stat. § 19-12-112 (Burns 1973 Supp.). It creates a personal liability entirely independent of whether the account is, or is not, secured by a mechanic's lien.

making a total of $2,684.50 properly found due from the Corporation to Cline. These findings justified the rendition of a personal judgment against the Corporation in that sum. The further finding that $1,250.00 is a reasonable fee for Cline's attorney for the foreclosure authorizes no addition to the amount of the personal judgment.

Attorneys' fees are authorized by section 13 of the mechanic's lien statute (Ind. Ann. Stat. § 32-8-3-14 [Burns Code Ed. 1973]) as a part of the *in rem* judgment against the interests of the owner who authorized the labor and materials but are not his personal liability unless he contracted to pay attorneys' fees. *Hubbard* v. *Burnet-Lewis Lumber Co.* (1912), 51 Ind. App. 97, 98 N.E. 1011; *Mann* v. *Schnarr* (1950), 228 Ind. 654, 671, 95 N.E.2d 138; 6 Lowe's Rev. WORKS IND. PRACT. 541, Form 88.16 and Comment.

The court quite properly made no finding that any sum was due from the Potters to Cline. As we have previously noted, there was simply no evidence that the Potters did anything at all to make themselves personally liable to Cline or to subject their interest, if any, in the real estate to his lien, if any, for the labor and materials he furnished to the corporation. There was, therefore, neither finding nor evidence sufficient to support any judgment against the Potters. They should have had judgment against Cline for their costs.

The judgment against J. LeRoy Potter and Robert F. Potter is reversed and the cause is remanded with directions to the trial court to enter judgment against James Cline that he take nothing from them and that they recover their costs from Cline. The trial court is further directed to modify the judgment against Potter Material Service, Inc., to conform to the views expressed herein. The order of sale should be modified to expressly state that only the interest of the Potter Material Service, Inc., if any, subject to the lien is being ordered sold. Whether any provision authorized by Trial Rule 69 (F) is to be included in the order is within the

trial court's discretion, if there is a proper motion requesting such provision.

Reversed in part, affirmed in part, and remanded with directions.

Lowdermilk, J., concurs; Sullivan, P.J., concurs in part and dissents in part, with opinion.

OPINION CONCURRING IN PART, DISSENTING IN PART

SULLIVAN, P.J.—While I concur in the majority opinion as to Parts I and III, I respectfully dissent from Part II thereof and from that portion of the remand order which permits modification of the judgment with respect to the order of sale. As does the majority, I would reverse the judgment below as it affects J. LeRoy Potter and Robert F. Potter and would affirm the personal judgment against Potter Material Service, Inc. I would however reverse the judgment insofar as it orders a sale of real estate, and would order the trial court to vacate and set aside that order of sale.

The portion of the judgment ordering sale of the real estate is as follows:

"IT IS THEREFORE CONSIDERED AND ADJUDGED by the Court that plaintiff have and recover of defendants the sum of $3,934.50 and court costs and that the real estate described in plaintiff's complaint, to-wit:

[description contained in decree excepts by metes and bounds a portion not excepted in plaintiff's complaint][1]

or so much thereof as may be necessary for the purpose, be sold by the sheriff as lands are sold on execution, without appraisement, and the proceeds applied to the payment of his judgment and costs and that the balance be paid to the defendants."

The order of sale is not restricted to satisfaction of the lien as against such interest as the corporate defendant, Potter Material Service, Inc., may hold. It purely and simply orders sale of the real estate to satisfy a lien in the amount

1. See footnotes 3 and 4, *infra*.

of $3,934.50 and that the balance be paid to the defendants. As held by the majority, the individual defendants are not shown to be liable for the amount of the judgment nor are they shown to hold any interest in the real estate to which a lien might attach. The interest of the corporate defendant may or may not be equal to the $3,934.50 judgment amount (the record gives us no assistance in this regard), but the majority opinion would purportedly cure the defective sale order by permitting modification to limit the sale to such interest, if any, owned by Potter Material Service, Inc.

For reasons herein set forth, I believe that the order was erroneous and is unmodifiable and that it must therefore be vacated and held for naught.

The majority poses the question in terms of whether proof of a lienable interest, i.e., "ownership", is essential to a judgment of foreclosure.[2] This posture leads my brothers to then rationalize a negative answer to the question by stating that such a foreclosure is not reversible since all that can be sold upon foreclosure is the interest, if any, held by the judgment defendant; and that if such defendant has no lienable interest at all, the sole adverse effect is upon the sale purchaser who acquires nothing.

This reasoning ignores a fundamental proposition of lien law, i.e., that a lien may only *attach* to the extent that the defendant holds a lienable interest. IC 1971, 32-8-3-1, Ind. Ann. Stat. § 43-701 (Burns 1965) and IC 1971, 32-8-3-2, Ind. Ann. Stat. § 43-702 (Burns 1965) ; *City of Portland* v. *Indpls. Mortar & Fuel Co.* (1914), 57 Ind. App. 166, 106 N.E. 735. If such interest is not shown by the evidence, no lien may be held to attach and the question of foreclosure and of a sale to satisfy a lien is never reached. It seems

---

2. The term "owner", as employed in IC 32-8-3-2, Ind. Ann. Stat. § 43-702 (Burns 1965) relating to the extent of a lien, which encompasses lessees, contract vendees, etc., must be distinguished from the term "owner" as it appears in IC 32-8-3-1, Ind. Ann. Stat. § 43-701 (Burns 1965) which in paragraph 4 requires notice of lien to the owner of record. *See William F. Steck Co.* v. *Springfield* (1972), 151 Ind. App. 671, 281 N.E.2d 530.

clear to me, therefore, that if no lien is shown to have attached to the real estate, any foreclosure decree ordering a sale of the property is erroneous and must be set aside. That conclusion is compelled not only by the limitations of the lien statute itself, but by the following language from *Courtney* v. *Luce* (1936), 101 Ind. App. 622, 626, 200 N.E. 501:

> "A person in possession of real estate under a contract of purchase *cannot defeat or cloud the vendor's title by suffering a mechanic's lien to be filed against such real estate* for improvements made thereon by him. *In order that a lien may attach* to the real estate it is necessary that such materials should be furnished or labor performed by the authority and direction of the owner and something more than mere inactive consent on the part of such owner is necessary in order that such lien may be acquired against him. *Holland* v. *Farrier* (1920), 75 Ind. App. 368, 130 N.E. 323; *Peoples Savings, Loan and Building Assn.* v. *Spears et al.* (1888), 115 Ind. 297, 301, 17 N.E. 470; *Rush* v. *Pittman* (1904), 34 Ind. App. 159, 162, 72 N.E. 473; *Toner* v. *Whybrew* (1911), 50 Ind. App. 387, 98 N.E. 450; *Robert Hixon Lumber Co.* v. *Rowe* (1925), 83 Ind. App. 508, 149 N.E. 92." (Emphasis supplied)

I am in disagreement, therefore, with the dictum of the majority opinion which would permit foreclosure without proof by plaintiff that the defendant owns some lienable interest in the real estate.

The remedies afforded by the Mechanics Lien Statute are in derogation of the common law and those who seek to avail themselves of the benefits of the law must strictly prove themselves to be within its scope and intendment. *Saint Joseph's College* v. *Morrison, Inc.* (1973), 158 Ind. App. 272, 302 N.E.2d 865. An essential element of such proof is that the defendant against whom foreclosure is sought, holds an interest in the described real estate to which the asserted lien may attach. Contrary to my brothers, I read *Littler* v. *Friend* (1906), 167 Ind. 36, 78 N.E. 238 and *Littler* v. *Robinson* (1906), 38 Ind. App. 104, 77 N.E. 1145, to require such proof.

The majority somewhat cursorily opines that an ill-considered order of sale based upon little more than proof of a debt against someone, even if a total stranger to the real estate, for labor or materials supplied, is not subject to direct appellate attack since the owner or owners cannot be harmed by such sale order. To be sure, such a decree can not divest the title of those not parties to the foreclosure. This truism should not, however, be viewed as justification for an erroneous foreclosure judgment and order of sale. Such a decree most certainly tends to cloud title and puts a true owner to the burden or expense of prosecuting or defending a quiet title action as in *Krotz* v. *A. R. Beck Lumber Co.* (1905), 34 Ind. App. 577, 73 N.E. 273; to enjoin the foreclosure sale as in *Martin* v. *Berry* (1902), 159 Ind. 566, 64 N.E. 912; to seek recovery of possession as in *Marvin* v. *Taylor* (1866), 27 Ind. 73; or to defend against a possessory action as in *Holland* v. *Jones* (1857), 9 Ind. 495. I believe such a burden to be onerous and unjustified, particularly when, as here, a contention is made upon direct appeal attacking, upon that basis, the validity of the order of sale. If the order is defective, it should be corrected at the first appellate opportunity. We should not avoid the question upon the reasoning that it is probable that no one will be prejudiced by such an order. Rather we should recognize the order's invalidity and thereby avoid possible, if not probable, future, unnecessary litigation.

More important to the result of this cause on appeal than my disaffection with the dictum set forth in the majority opinion, is my disagreement with the conclusion of my brothers that the evidence is sufficient to establish a lienable interest held by Potter Material Service, Inc.

In my estimation, the evidence of record and as recited by the majority falls far short of establishing, even prima facie, ownership of a lienable interest in Potter Material Service, Inc. The majority relies upon speculation and upon

the premise that one exercising substantial control and domain over real estate must necessarily own an interest therein.

I do not believe such inference to be reasonable; nor do I believe that *Merritt* v. *Pearson* (1881), 76 Ind. 44, *Littler* v. *Friend, supra,* or *Littler* v. *Robinson, supra,* justifies such inference.

In *Merritt,* the defendant himself testified that he was the owner of the real estate involved in the lien foreclosure and in both *Littler* cases, documentary evidence in the form of the real estate transfer records of the county auditor were admitted which showed Littler as owner of record. The testimony of a Potter Material Service employee to the effect that he had been so employed "from when they bought the place" is dramatically and substantially different not only in degree but in kind from that present in *Merritt* and the *Littler* cases. *See Windfall National Gas, Mining & Oil Co.* v. *Roe* (1908), 41 Ind. App. 687, 84 N.E. 996.

The speculative exercise in which the majority indulges does violence to the law of real estate titles and, if not rendering our title recordation statutes virtually meaningless, jeopardizes the security of titles and interests so recorded. As stated by Judge Hoffman, concurring in *William F. Steck Co.* v. *Springfield* (1972), 151 Ind. App. 671, 281 N.E.2d 530 at 536:

> "The mechanics' lien statute depends upon the public records to give it vitality. A no-lien contract is only effective when filed of record. A lien must be timely filed of record to give it existence. Notice of lien is required to be mailed to the latest address of the owner as shown by the public records. The description of real estate to be placed upon the notice of lien is that shown by the public records. The entire mechanics' lien statute demonstrates the legislative intent that any person who wishes to acquire a lien upon any property, must depend upon the public records when acquiring or enforcing their mechanic's lien."

Since the court below made no determination with respect to the extent of Potter Material Service, Inc.'s interest in the

real estate, if any, the order of sale which did not restrict the interest or interest to be sold was unlawfully and erroneously extensive. By its unrestricted breadth, the order of sale included all interests in the real estate described. It included not only the undefined (at least by evidence of record) interest of Potter Material Service, Inc.,[3] but the fee simple title as well. It included real estate in which the corporation may well have had no interest whatever.[4] It is my view of the law, that such order was therefore erroneous and should be reversed. It is impossible of meaningful and proper modification pursuant to the evidence of record.

The remand order of the majority herein would have the trial court modify its order of sale "to expressly state that only the interest of the Potter Material Service, Inc., if any, subject to the lien is being ordered sold." I wholly fail to divine from the record any evidence upon which the trial court could determine and delineate the nature or extent of the interest to be sold. It is not enough that the trial court order sold defendant's interest, "if there be any." It must first determine that there is a lienable interest owned by defendant to which plaintiff's lien may attach. In order to make that requisite initial determination, there must be evidence of the nature and extent of the interest held. As heretofore stated, I do not believe that there is evidence from which the court can reasonably make such determination and for that reason, I consider the order of sale unmodifiable and would order it vacated.

NOTE.—Reported at 316 N.E.2d 422.

---

3. Even the answer to interrogatories, which was *not* in evidence, is unsupportive of a foreclosure against all of the real estate described in the order of sale since that answer stated that the corporation was a conditional vendee of part of the described real estate. The evidence does not disclose the portion of the real estate in which the asserted contract vendee held equitable title.

4. Although the foreclosure decree contains a metes and bounds exception to the real estate described in plaintiff's complaint, it would require gross speculation to assume that such exception represents the part of the real estate *not* held by the corporation as conditional vendee, even if one were to accept the non-evidentiary and extraneous interrogatory answer (see footnote 2).