WILLIAM F. STECK CO. ET AL. *v.* HORTY AND ESTHER SPRINGFIELD.

[No. 371A50. Filed April 20, 1972. Rehearing denied May 30, 1972. Transfer denied November 1, 1972.]

*Arthur J. Sullivan, David F. McNamar, Steers, Klee, Sullivan & Lemay,* of Indianapolis, for appellant.

*Rex P. Killian, John C. Ruckelshaus, Ruckelshaus, Bobbitt & O'Connor,* of Indianapolis, for appellees.

STATON, J.—This is an appeal from a negative judgment. Appellants, William F. Steck Company, Inc. and Indiana

Distributing Company of Indianapolis, Inc. delivered certain materials to the site where the Appellees, Horty Springfield and Esther Springfield, were having their new home built by R. C. Krachenfels, a contractor. After the new home was finished and the Springfields had concluded all property closing arrangements with the contractor, William F. Steck Company, Inc. and Indiana Distributing Company of Indianapolis, Inc. brought an action to foreclose upon their filed mechanic's liens, since the contractor had not paid for the material delivered and installed in the Springfields' new home. The trial court found for the Defendants-Appellees, Horty Springfield and Esther Springfield. Appellants, William F. Steck Company, Inc. and Indiana Distributing Company of Indianapolis, Inc., are appealing from this judgment against them. Their appeal urges an interpretation and construction of IC 1971, 32-8-3-1, Ind. Ann. Stat. § 43-701 (Burns 1971 Cum. Supp.). We affirm the trial court's judgment in our opinion which follows.

Horty Springfield and Esther Springfield entered into a construction contract with R. C. Krachenfels, Inc. on March 14, 1964 for their new home, commonly known as 1443 Greer Dell to be built on real estate in Marion County, Indiana, and more particularly described as follows:

> Lot 27 in Greer Dell Estates, a Subdivision in Marion County, Indiana, as per plat thereof, recorded in Plat Book 29, page 429, in the office of the Recorder of Marion County, Indiana.

The contract providing among other things that "upon commencement of construction buyers will convey deed to lot to contractor for the duration of said contract to be used as collateral. Lot will be deeded to buyers at closing of said contract." The deed was not executed and delivered to R. C. Krachenfels until September 14, 1964. In the meantime, while the new home was being constructed, William F. Steck Company began to perform services and deliver materials on

June 2, 1964, and Indiana Distributing Company began to perform services and deliver materials on July 27, 1964.

The property closing between R. C. Krachenfels, the Springfields and The Equitable Life Assurance Society of the United States, who was taking a first mortgage on the real estate, was conducted September 30, 1964. R. C. Krachenfels executed an affidavit at the closing, which *inter alia* lists oustanding claims:

"The construction of said residence has now been completed and the property is occupied by the owners. All of the labor and material claims have been paid except the following:

| | |
|---|---|
| Peerless Corporation | $422.00 |
| Greenwood Marble & Tile | 689.45 |
| Stonecraftsmen, Inc. | 1175.45 |
| Lumber Mart, Inc. | 3102.93 |
| Dorrell Co., Inc. | 155.00 |
| Robert C. Krachenfels | 2674.60 |

"There are no other unsatisfied claims of mechanics, laborers, contractors or materialmen for work done or material furnished which can become a lien upon said real estate.

"This affidavit is made for the purpose of inducing THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES to make a loan on said premises, the proceeds of which are to be used to pay claims against this property, so that the mortgage given THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES will be a first lien upon said premises, subject only to taxes and improvement assessments.

/s/ Robert C. Krachenfels"

Contrary to the affidavit, William F. Steck Company, Inc. had an unpaid claim in the sum of $1,408.27 and a notice of intent to hold a mechanic's lien in this amount was filed November 5, 1964. Indiana Distributing Company of Indianapolis, Inc. filed its notice of intent to hold a mechanic's lien for $1,681.30 on October 12, 1964.

A court trial was commenced on April 4, 1969 in an at-

tempt to foreclose on the mechanic's liens. The trial court found for the Defendants-Appellees, Horty Springfield and Esther Springfield. William F. Steck Company, Inc. and Indiana Distributing Company of Indianapolis, Inc. as Plaintiff-Appellants bring this appeal.

The language of the statute IC 1971, 32-8-3-1, *supra* with which we are concerned here is:

> "Any person, firm, partnership, or corporation who sells or furnishes on credit any material, labor or machinery, for the original construction of a single or double family dwelling for the intended occupancy of the owner upon whose real estate the construction takes place to any contractor, subcontractor, mechanic or anyone other than the owner or his legal representatives shall furnish said owner a written notice of the delivery or labor and the existence of lien rights within fourteen [14] days from the date of the first delivery or labor performed. The furnishing of such notice shall be a condition precedent to the right of acquiring a lien upon such real estate or upon the improvement constructed thereon."

No dispute exists that notice to the "owner" is mandatory and a "* * * condition precedent to the right of acquiring a lien upon such real estate * * *." There is no dispute that the first deliveries were made June 2, 1964 and July 27, 1964 and that no notice was given Horty Springfield and Esther Springfield during the fourteen days that followed. It is agreed that the Springfields were the owners of record when the deliveries were made. The appeal is predicated upon an exception under the statute. William F. Steck Company, Inc. and Indiana Distributing Company of Indianapolis, Inc. contend that notice is not required when dealing directly with the "* * * owner or his legal representatives * * *."

The question is whether William F. Steck Company, Inc. and Indiana Distributing Company of Indianapolis, Inc. were doing business with the "* * * owner or his legal representatives * * *" so that they can bring themselves within the exception.

The first contention urged in support of the exception goes to the interpretation of the word "owner" as it is used in paragraph four of the statute. Supporting case authority cited by the Appellants in their brief to circumscribe the meaning of this 1963 statutory amendment is for the most part dated back to the late 1800's and early 1900's. These cases are of some assistance to us, but all the cases cited can be easily distinguished on the facts or statutory language being considered. For example, *Carew* v. *Stubbs* (1892), 155 Mass. 549, 30 N. E. 219, 220, where the vendor agreed to advance $9,000.00 and to convey title upon the completion of the foundation by the vendee in return for a mortgage, the Massachusetts court related these agreed facts:

> "Both said Carew and said Hayes commenced work under their respective contracts before February 15, 1889, when the deed and mortgage hereinafter mentioned were given; but neither of them furnished any materials until after said date,—the work referred to being done not on the premises, but at the places of business of the said petitioners. Fifth. That a certificate of lien was filed on September 20, 1889, by said Hayes, to secure the sum of $288.17, claimed as a balance for labor and material,—he not then having fully completed his contract, but having received thereon $363.83 on account; and that on September 27, 1889, a certificate of lien was also filed by said Carew, to secure the sum of $815, claimed as the balance for both labor and material,— he having received $20 on his contract."

Applying the statutory provision of Pub. St. c. 191, § 1, the Massachusetts court held:

> "By implication, Nason authorized Stubbs to employ the necessary workmen to build the house and to procure the necessary materials; and the labor and materials thus contracted for were procured with the consent of Nason, within Pub. St. c. 191, § 1; * * *
> "1. * * * Pub. St. c. 191, § 1, provides: 'Any person to whom a debt is due for labor performed or furnished, or for materials furnished and actually used, in the erection, alteration, or repair of a building or structure upon real estate, by virtue of an agreement with or by consent of the owner of such building or structure, or of any person

having authority from or rightfully acting for such owner in procuring or furnishing such labor or materials, shall have a lien upon such building or structure; and upon the interest of the owner thereof in the lot of land upon which the same is situated, etc.' "

Considerable significance is placed by William F. Steck Co., Inc. and Indiana Distributing Company of Indianapolis, Inc. upon the fact that R. C. Krachenfels and his wife mortgaged this real estate to the Central Mortgage, Inc. of Howard County, Indiana on August 24, 1964 before the deed was executed by the Springfields and delivered to R. C. Krachenfels, Inc., the contractor. The contract between the Springfields and R. C. Krachenfels, Inc. does not expressly provide that R. C. Krachenfels and his wife, Etta A. Krachenfels shall have the right to encumber the real estate with a mortgage. It states *inter alia* that:

"2. The Buyers shall pay to the Contractor as consideration for said work and materials the sum of Thirty-Two Thousand Five Hundred Dollars ($32,500.00), subject to additions and deductions as hereinafter provided, which consideration shall be paid in the following manner:

$6,125.00 Down Payment (Down Payment will be held in escrow and returned if Buyers fail to obtain Mortgage Commitment.)

$26,375.00 As Per Contract

"Upon commencement of construction Buyers will convey deed to lot to Contractor for the duration of said Contract to be used as collateral. Lot will be deeded to Buyers at closing of said Contract.

"3. As security for the Contractor's expenditures under this agreement after a mortgage commitment if obtained and before the house is completed, and the balance of the Contract Price becomes due, the Buyers promise and agree to execute a conventional promissory note at the time the mortgage commitment is obtained in the face amount of $26,375.00, which note shall be non-interest * * *"

We suggest that the agreement does not contemplate such action by the contractor and his wife. We fail to see that

this act by R. C. Krachenfels and his wife is controlling in any way. We will not comment on the validity of the transaction.

The execution and delivery of the deed to R. C. Krachenfels, Inc. [not R. C. Krachenfels and Etta A. Krachenfels, husband and wife] by the Springfields did no more than create an "equitable mortgage." *Ferguson* v. *Boyd* (1907), 169 Ind. 537, 81 N. E. 71.

A contractor who takes title to real estate for "collateral" is not an "owner" within paragraph four of the statute while he is constructing a single or double family dwelling for the former title holders who intend to occupy the completed single or double family dwelling. The intended purpose of this statute is to put the "owner" on notice of all the outstanding indebtedness that the contractor has incurred during the building of a new home. Where the "owner" of real estate is contracting to have an original single or double family dwelling constructed upon real estate to which he holds title, the only protection from upaid bills for material and labor that such member of the public has when settling his account with the contractor is this provision of the statute. The contractor cannot circumvent or avoid the intent of the statute by merely having the title to the property placed in his name during the period of construction. The purpose of the statute is to avoid what has happened in this case.

The second contention in support of the exception is that if R. C. Krachenfels was not the "owner" then he was at least the "legal representative" of the "owner".

The term "legal representative" may be given a restricted meaning which encompasses only executors and administrators. *Ewing* v. *Jones* (1891), 130 Ind. 247, 251, 29 N. E. 1057. Also see 52A C.J.S., *Legal,* p. 754. William F. Steck Co., Inc. and Indiana Distributing Company of Indianapolis, Inc. urge that the term "legal representative" has no fixed meaning in

law and should be broadly construed. They cite 52A C.J.S., *supra* at 756, which states:

> "In the broad sense, as distinguished from the legal sense stated above, the term 'legal representative' has been defined as meaning any person, natural or artificial, who by operation of law stands in the place of and represents the interests of another; . . . one who lawfully represents another in any matter whatever; . . ."

This broad construction would encompass one who is merely acting as an agent. William F. Steck Co., Inc. and Indiana Distributing Company of Indianapolis, Inc. conclude that:

> "The legislature obviously meant some capacity such as agent of . . . an 'owner' . . . to equate with 'legal representative' herein and clearly R. C. Krachenfels, Inc., falls within [such] . . . categor[y], . . ."

We do not believe that the mechanics' lien statute is subject to a broad and liberal construction. Our ■ Supreme Court in *Puritan Engineering Corp* v. *Robinson* (1934), 207 Ind 58, 60, 191 N. E. 414 held:

> "The mechanics' lien statute, being in derogation of the common law, will be strictly construed to ascertain who are within its provisions, and the burden is upon one asserting a lien to bring himself within its provisions." (Citing *Potter Mfg. Co.* v. *A. B. Meyer & Co.* (1909), 171 Ind. 513, 86 N. E. 837; *Ward* v. *Yarnelle* (1910), 173 Ind. 535, 91 N. E. 7.)

It is further urged in support of this contention that:

> "* * * if the Legislature had in fact intended the term 'legal representative' to include only 'executors and admininstrators' within the meaning of this statute, then the legislature would have used the terms 'executor' and 'administrator' when it wrote the statute."

The same argument can be used for determining whether the legislature intended the term "legal representative" to mean "agent." We are not persuaded.

Strictly construing IC 1971, 32-8-3-1, *supra,* we hold that the term "legal representative" is not broad enough to include a contractor acting as an "agent" for the "owner." The term "legal representative" as used in the fourth paragraph of the statute may not be confined in its meaning to merely "executor or administrator." It is not neecssary for us to circumscribe the outer limits of its meaning or to speculate on all of its possible meanings in many varied fact situations unrelated to the cause now before us.

The judgment of the trial court should be and the same hereby is affirmed.

Hoffman, C.J., concurs in result with opinion; Sharp, J., concurs.

### CONCURRING OPINION

HOFFMAN, C.J.—I concur in the result reached by the majority opinion but disagree with the reasoning applied therein.

The majority opinion states that the execution and delivery of the deed to R. C. Krachenfels, Inc. by the Springfields did no more than create an "equitable mortgage." This is true as between the parties to the deed. However, the controversy before this court involves a third party who is not involved in the transaction between Krachenfels and the Springfields.

The question before this court is who is the "owner" within Paragraph Four of the Acts of 1963, ch. 376, § 1, p. 963, § 43-701, Burns 1965 Repl., which provides for furnishing written notice to the "owner" of "the delivery or labor and the existence of lien rights within fourteen [14] days from the date of the first delivery or labor performed."

In the instant case the first delivery or labor performed by appellants was June 2, 1964 and July 27, 1964, and was furnished at the request of Krachenfels. Under § 43-701, *supra,* appellants had until June 16, 1964 and August 10,

1964, to furnish written notice to the owner. Timely written notice was essential to perfect a lien *if* the owner was not Krachenfels.

During all of the time hereinabove referred to Springfields were the owners as shown by the public records of Marion County. Not until September 18, 1964, was a deed recorded passing title from Springfields to Krachenfels.

The mechanics' lien statute depends upon the public records to give it vitality. A no-lien contract is only effective when filed of record. A lien must be timely filed of record to give it existence. Notice of lien is required to be mailed to the latest address of the owner as shown by the public records. The description of real estate to be placed upon the notice of lien is that shown by the public records. The entire mechanics' lien statute demonstrates the legislative intent that any person who wishes to acquire a lien upon any property, must depend upon the public records when acquiring or enforcing their mechanic's lien.

The only logical and reasonable definition of the word "owner" as used in the mechanics' lien statute is *that person as shown to be the owner by the public records.*

In the instant case the Springfields were the owners as shown by the public records, and they received no notice as required by the statute. Therefore, no lien was acquired by the appellants herein.

NOTE.—Reported in 281 N. E. 2d 530.