MID AMERICA HOMES, INC., Appellant
(Plaintiff Below),

v.

Eldon HORN and Mary Horn, Appellees
(Defendants Below).

No. 1179 S 317.

Supreme Court of Indiana.

Nov. 16, 1979.

Alan E. O'Connor, Hobart, for appellant.

E. Lee Bazini, Warsaw, for appellees.

ON PETITION TO TRANSFER

PRENTICE, Justice.

This case is before us upon the petition of Defendants (Appellees) to transfer the cause from the Court of Appeals, Third District, that Court having reversed the judgment of the trial court in favor of the defendants, (appellees). Said opinion is an erroneous decision upon a question of law involving the interpretation of a section of the Mechanic's Lien statute, Ind.Code § 32–8–3–1 (Burns 1973). Accordingly, that decision and the accompanying opinion, which may be found at 377 N.E.2d 657, are hereby vacated, and the defendants' petition to transfer is granted.

On August 29, 1973, the defendants entered into an oral agreement to purchase certain land, a residential building site, from Joseph A. Arnold and wife. Two days later, on August 31, 1973, the defendants entered into a written contract with James A. Kline, d/b/a Jamco Builders, for the construction of a new single family dwelling for their occupancy upon the aforesaid land.

On September 5, 1973, Jamco ordered a "house and trim package" from the plaintiff, Mid America Homes, Inc. The order designated the plaintiff, Eldon Horn, as the buyer. On September 11, 1973, the plaintiff delivered the "house package" to the aforementioned building site. The invoice therefor bore Eldon Horn's name. At the same time, the plaintiff forwarded by certified mail, a written notice to the Arnolds, who were then the record title holders of said land. The notice advised that the plaintiff was furnishing materials for the construction of a dwelling house upon said land and that it was given to preserve the right to place a lien against the real estate. On September 14, 1973, Joseph Arnold receipted for the notice of September 11th, and on September 18th, the Arnolds conveyed title to the aforementioned land to the defendants by deed which was recorded the same day. On September 24th, the plaintiff received a copy of the aforementioned notice from Mr. Arnold, in acknowledgment of the receipt thereof. At the bottom of the acknowledgment copy, Mr. Arnold notified the plaintiff that, as of September 19th, the title holders of record were the defendants.

The defendants made various payments to Jamco on account of the aforementioned construction, but Jamco did not pay the plaintiff the amount due it upon the "package" utilized in the construction. On December 17th, the plaintiff recorded its notice of an intention to hold a mechanic's lien against the defendants' real estate. Notice thereof was sent to the defendants, who were then the record titleholders. On August 23, 1974, the plaintiff filed its complaint to foreclose its mechanic's lien for labor and materials in the amount of $11,624.44 plus interest. The plaintiff secured a default judgment against James and Peggy Kline, d/b/a Jamco, who defaulted, but judgment was rendered for the defendants, as to the plaintiff's claim of a lien against the real estate.

This case is controlled by our interpretation of the word "owner" as used in that paragraph of the Mechanic's Lien statute, Ind.Code § 32–8–3–1 (Burns 1973) requiring would-be lienholders to give written notice of the delivery of materials or the furnishing of labor for the construction of single or double family dwellings intended for occupancy of the owner. Said provision is as follows:

"Any person, firm, partnership or corporation who sells or furnishes on credit any material, labor or machinery, for the original construction of a single or double family dwelling for the intended occupancy of the owner upon whose real estate

the construction takes place to any contractor, subcontractor, mechanic or anyone other than the owner or his legal representatives shall furnish said owner a written notice of the delivery or labor and the existence of lien rights within fourteen [14] days from the date of the first delivery or labor performed. The furnishing of such notice shall be a condition precedent to the right of acquiring a lien upon such real estate or upon the improvement constructed thereon." [1]

■ Mechanic's Lien statutes give a lien where none existed at law or in equity. Such liens are creatures of the statutes and exist only by virtue of the claimant's compliance with the statutes begetting them. Such statutes should be fairly construed, with a view towards carrying out their purpose, i. e. to afford the security intended, upon a substantial compliance with its provisions, while at the same time, protecting the rights of non-debtor owners and those who may subsequently acquire an interest in the real estate.

Being in derogation of the common law, the provisions of such statutes relating to the creation, existence or persons entitled to the lien have historically been strictly construed. *Puritan Engineering Corporation v. Robinson, Trustee, et al.,* (1934) 207 Ind. 58, 191 N.E. 141.

The Court of Appeals determined that the defendants were not entitled to notice from the plaintiffs, under the aforementioned provision of the statute, because they were not the owners of record at the time the plaintiffs furnished the materials and labor for which the lien was claimed, noting that "the Horns contracted for the construction of a house before taking legal title to the real estate," and citing the concurring opinion in *William F. Steck Co. v. Springfield,* (1972) 151 Ind.App. 671, 281 N.E.2d 530. We disapprove the definition of "owner" as given in that opinion, as being unduly restrictive and not in keeping with the purpose of the statute. Prior to the 1963 amendment, the statute under consideration made no provision for the giving of written notices to owners by those furnishing labor and materials to contractor constructing family dwellings, for the intended occupancy of such owners. Neither were innocent purchasers of such dwellings afforded any protection from liens which attached retroactively, even though notice thereof was not of record at the time of their purchase. In its pre-amended form, the statute often worked gross inequities upon innocent owners or purchasers who had had the misfortune of dealing with unreliable contractors or vendors, while protecting the interest of laborers and materialmen who had relied upon the same unreliable persons. Because of such equitable imbalance, the statute was amended to give such owners and purchasers relief from the prior harshness, by requiring notices to be given and/or recorded by those seeking to have a lien, at a time which such notices would be of benefit.

■ The opinion of the Court of Appeals, in the case at bar, and the concurring opinion in *William F. Steck Co. v. Springfield, supra,* speak of the lien claimants following reasonable business practices of searching the public records and of the owners deeds being or not being of record, suggesting some inherent right in the lien claimants to have their claims protected at the owners expense. But such concept is contrary to law and equity. As previously stated, the laborer had no lien at common law, and equity gave him none, his entitlement arose by statute alone and frequently exists at the expense of innocent owners and in defiance of the equities. It is only reasonable that such owners, disadvantaged by the statute, should not carry the additional burden of owing affirmative action to protect the claimants' rights thereunder. Conversely, it is altogether reasonable to require strict compliance, by the claimants, with notice requirements designed to protect the owners and purchasers from the inequities of the statute. Such protection comes not at the claimant's expense but

---

1. In 1977, the statute was amended to require notice of lien rights within sixty days rather than fourteen days. The fourteen day period controls in the case at bar.

rather at the expense only of those who owe the debts to the claimants but, absent notice to the owners, might default.

The word "owner" appears throughout the statute. It first appears with reference to the improvements made and specifically provides for a lien upon such improvements and "on the interest of the owner of the lot or parcel of land * * *." The word "interest" therein makes it clear that "owner" refers to one having a lienable interest therein, not merely a fee simple title, a legal interest, or a title or other interest evidenced by a recorded deed.

The word next appears with reference to "no-lien" contract provisions agreed to by the "owner" and principal contractor. Who is the owner of leasehold improvements— improvements made by a lessee, and whose interest is subject to a lien for labor and materials furnished in their construction?

Section 2 of the statute, Ind.Code § 32–8–3–2 (Burns 1973) provides a distinctive clue. It limits the liens to the interest of the *owner* * * * "for whose immediate use or benefit such labor was done or material furnished; * * *." (Emphasis ours.)

Section 3 of the statute Ind.Code § 32–8–3–3 (Burns 1973) refers to the owner as shown on "the County Auditor's transfer books at the time of filing of the notice of intention to hold a lien." In this regard, it must be considered that the notice requirements of Sections 1 and 3, in essence fulfill different purposes. The requirement in Section 1 alerts the owner for whose use or benefit the work is to be done or materials to be furnished, in advance of the time when he is likely to pay the contractor, in order that he may see to the proper application of the proceeds by the contractor. The notice required by Section 3 comes at a time when it is often unlikely to benefit the owner. Its function is to alert prospective purchasers, lenders, tenants, etc. who may otherwise deal with such owner, without requiring the consideration to be applied first to the discharge of the claimed liens.

Consistent with the foregoing analysis of the legislative intent, the courts of this state have held "that a contract-purchaser could not subject the interest of the unknowing owner of the legal title (the vendor) to a lien, *Woods v. Deckelbaum,* (1963) 244 Ind. 260, 191 N.E.2d 101; that a lien could attach to an oil well for the erection of the derrick for the lessee, although the lease was forfeited for failure to drill according to the lease terms, *Montpelier Light & Water Company v. Stephenson,* (1899) 22 Ind.App. 175, 53 N.E. 444; that the interest of a purchaser under a contract is subject to a lien for materials furnished for the building upon the land, *Kendall Lumber & Coal Co. v. Roman,* (1950) 120 Ind.App. 368, 91 N.E.2d 187; and that a lien may be imposed on whatever interest the individual who contracts for the work or the material used, whether the interest is legal or equitable. *Fletcher Avenue Savings & Loan Association v. Roberts,* (1934) 99 Ind.App. 391, 188 N.E. 794. In the last cited case it was said:

"There is nothing in our mechanic's lien statutes which indicates that the word 'owner' was used in a narrow sense, meaning only owner of the fee; on the contrary the provision in section 9832, [Burns' Ann.St.1926] Burns R.S. 1926, § 43–702, Burns 1933, § 10506, Baldwin's 1934, that's the entire land * * * shall be subject to lien to the extent of all the *right, title* and *interest* owned therein by the owner thereof * * *' (our italics) indicates that the word 'owner' was used in a broader sense. If it was intended by the Legislature to provide that only the holders of title in real estate could subject it to mechanic's liens, they should not have included the words 'right' and 'interest' in said provision as they did, because under such circumstances the words 'right' and 'interest' would be superfluous and not necessary to express the legislature's intention.

"In construing statutes we must presume that the Legislature intended each word used in the statute, to be necessary to express its intention, and we must regard such presumption until it forces us to an unreasonable construction of the statute, therefore we hold that the Legislature intended to make not only the title

subject to a mechanic's lien, but any right or interest, as well." 99 Ind.App. at 396, 188 N.E. at 796.

It would be an anomaly indeed if the lien statutes were permitted to operate against all interests in real estate while the provision thereof designed to protect the owners against loss thereunder could benefit only the record titleholders. In the case before us, notice to the Arnolds, as the record titleholder, could have served no purpose, as they were not the ones upon whose order the improvements were made; and, absent their agreement or equitable considerations estopping them from denying responsibility, neither of which were shown or claimed, their interest in the real estate could not have been subjected to the lien. It was of no concern to the Arnolds that the plaintiff was furnishing materials and labor for a dwelling to be occupied by the defendants. It is to their credit that they notified the plaintiff of its error; and it is unfortunate that the plaintiff took no steps in consequence thereof.

We hold that the "owner" entitled to notice, under the provision of the statute under consideration, is the owner of that interest which may be subjected to the lien anticipated by the notice, in this case the defendants. Hence, absent equitable considerations estopping such persons from denying notice, those seeking the benefits of the lien may not rely upon the public records but are enjoined, at their peril, to give notice to such owner. This will preclude blind reliance upon a search of the record title. Cf., *Lang v. Adams,* (1905) 71 Kan. 309, 80 P. 593, 594; *F. M. Sibley Lumber Co. v. Gottesman, et al.,* 314 Mich. 60, 22 N.W.2d 72; *Toler v. Satterthwaite,* (1967) 200 Kan. 103, 434 P.2d 814; *Wyoming Park Lumber & Fuel Co. v. Vander Ark,* (1939) 291 Mich. 496, 289 N.W. 228; *Hessinger v. Sorenson,* (1970) N.D., 180 N.W.2d 910. For annotation of the meaning of "owner" in real property statutes, including mechanic's lien statutes, see 2 A.L.R. 778.

Even if we were to accept the plaintiff's position that the Arnolds were the "owners" under the statute, we would,

nevertheless, be compelled to grant transfer and affirm the trial court under the doctrine that a judgment will be upheld if sustainable upon any theory supported by the evidence. *Brockman v. Detroit Diesel Allison Division,* (1977) Ind.App., 366 N.E.2d 1201. For if Arnolds were the "owners" they, nevertheless, were not the owners for whose occupancy the dwelling to be constructed was intended. Under that assumption, the defendants were "purchasers" qualifying under the last paragraph of the statute, Ind.Code § 32–8–3–1 (Burns 1973), and in order for the plaintiff to have obtained a lien it would have been required that their lien notice be placed of record prior to the recording of the defendants' deed from the Arnolds, which it was not.

Transfer is granted. The decision and opinion of the Court of Appeals is ordered vacated; and the judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.