**Steven SHACKELFORD, Appellant–Defendant,**

**v.**

**Ronald D. RICE and Susan R. Rice, and First National Bank, Appellees–Plaintiffs.**

**No. 41A04–9506–CV–240.**

Court of Appeals of Indiana.

Jan. 10, 1996.

Transfer Denied May 22, 1996.

---

14. Sophie signed a certified receipt for the Order to Take Action on that date.

Bruce D. Brattain, Linda B. Klain, Brattain & Minnix, P.C., Indianapolis, for appellant.

Robert H. Schafstall, Cutsinger & Schafstall, Franklin, for appellee, First National Bank.

Ronald G. McLean, Treacy, Grossman & Sullivan, Indianapolis, for appellees, Ronald D. Rice and Susan R. Rice.

## OPINION

FRIEDLANDER, Judge.

Steven Shackelford appeals the trial court's grant of partial summary judgment entered in favor of Ronald and Susan Rice (the Rices), which determined that a mechanic's lien Shackelford claimed on certain real property was invalid.

We reverse.

The facts most favorable to Shackelford, the nonmoving party, are that on November 11, 1992, the Rices contracted with J. Lindsey Builders (J. Lindsey) for the construction of a single family dwelling in Greenwood. The Rices paid $33,900 along with a $1,000 deposit to the builders, who allegedly paid that amount to Robert J. Lane for the purchase of the real property.[1] Legal title to the property was transferred from Lane to J. Lindsey on December 30, 1992, which al-

lowed J. Lindsey to obtain a construction loan to build the Rices' home.

In January, 1993, First National Bank (the Bank) made a construction loan to J. Lindsey for $150,000, and in return, took a mortgage on the property. J. Lindsey defaulted on the construction loan and the Bank sought to foreclose all interests in the property including a number of mechanic's liens filed by various subcontractors. Shackelford was one of the suppliers who had furnished labor and materials for masonry improvements to the property in July, 1993. Shackelford never received payment for his work. Shackelford gave timely pre-lien notice only to J. Lindsey (owner of record), inasmuch as he did not know of the Rices' involvement.

While the Rices were scheduled to "close" on the real property and take title on August 24, 1993, they could not do so in light of the mechanic's liens that were filed. The bank instituted foreclosure proceedings against the Rices, Shackelford, and other mechanic's lienholders on November 3, 1993. Shackelford maintained that his mechanic's lien was valid and requested that his lien be foreclosed, the real property sold, and that his interest be deemed superior, or on parity with, the interests of all other parties to the real estate.

The Rices sought to quiet title against the bank and Shackelford, and eventually moved for summary judgment. On January 25, 1995, the trial court granted the Rices' motion and entered the following order on January 30:

> "This cause came for hearing on the Cross Motion for Partial Summary Judgment filed June 23, 1994 by the Defendants/Counter–Claimants, Ronald D. Rice and Susan Rice ('Rices'), and the Court having heard the arguments of counsel, and having reviewed the supporting and opposing affidavits, memoranda of law, and specific references to evidentiary material relied upon in support of an [sic] in opposition to the motion, now finds and concludes as follows:

---

1. It is unclear whether J. Lindsey actually used the money given by the Rices to pay for the real property. The Rices have instituted an action for fraud claiming that the money was not used to buy the lot.

1. The following facts are without substantial controversy:

(a) On November 11, 1992, the Rices entered into a written agreement with defendant, Jerry L. Lindsey d/b/a J. Lindsey Builders ('Lindsey'), for the construction of a residence on Lot 5, Oak Meadows Subdivision, Section 1, in Johnson County, Indiana. The Rices had already made a deposit of $1,000.00 on the lot to Robert J. Lane, Inc. ('Lane') and pursuant to the agreement, the lot was to be placed in the name of Lindsey so that a construction loan could be obtained. The Rices paid the balance of the lot price of $33,900.00 to Lindsey by December 15, 1992 and Lindsey obtained a deed from Lane on or about December 30, 1992.

(b) A construction loan was obtained by Lindsey from the plaintiff, First National Bank ('Bank'), on or about January 28, 1993. Pursuant to the agreement, Lindsey was to begin construction of the home with Rices to pay the balance of the sales price at the time of closing. The Rices had financing approved and were prepared to close on or about August 24, 1993. On August 30, 1993, the Rices moved into the home and have resided there ever since.

(c) During the period from January 28, 1993, and continuing through August 24, 1993, the following defendants allege they have provided materials and labor to Lindsey for the construction of the home:

 . . . . .

ii. Steven Shackelford, who recorded his notice of intention of [sic] hold a mechanic's lien on August 17, 1993.

 . . . . .

(d) At no time did any of these defendant mechanic's lien claimants ever furnish Rices written notice of any delivery of labor and the existence of lien rights.

2. The Court adopts and incorporates the facts listed above which are without substantial controversy.

3. Upon execution of the agreement with Lindsey, Rices became the 'owners' of Lot 5 and entitled to written notice of the delivery of materials of furnishing of labor and the existence of lien rights with[in]

sixty (60) days from the date of this first delivery under Indiana Code 32–8–3–1. See *Mid America Homes, Inc. v. Horn,* (1979), 272 Ind. 171, 396 N.E.2d 879.

4. Since the furnishing of such notice is a condition precedent to the right to acquire a lien on the real estate or upon the improvement construction thereon, the mechanic's liens claimed by the defendants are void and invalid.

THEREFORE, IT IS ORDERED BY THE COURT that the Motion For Partial Summary Judgment filed June 23, 1994, by the Defendants/Counter–Claimants, Ronald D. Rice and Susan Rice, is hereby granted.

IT IS FURTHER ORDERED that there is no just reason for delay and hereby directs that final judgment be entered as to the claims of the foregoing mechanic's lien claimants."

*Record* at 103.

Shackelford appeals and presents the following issue:

Did the trial court err as a matter of law when it determined that Shackelford's mechanic's lien was invalid?

 In reviewing an appeal from a grant of a motion for partial summary judgment as to the issue of whether a developer holds a valid mechanic's lien, this court faces the same issues that were before the trial court and follows the same process as the trial court. *Premier Investments v. Suites of America* (1994), Ind., 644 N.E.2d 124. Summary judgment is appropriate when the evidence designated to the trial court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Rules of Procedure, Trial Rule 56(C); *see also Premier Investments, supra.* In determining whether there is a genuine issue of material fact precluding summary judgment, all doubts must be resolved against the moving party and facts properly designated by the party opposing the motion must be accepted as true. *Timothy F. Kelly and Assoc. v. Illinois Farmers Ins. Co.,* (1994), Ind.App., 640 N.E.2d 82; *Jarvis Drilling, Inc. v. Midwest Oil Producing Co.* (1993),

Ind.App., 626 N.E.2d 821, *trans. denied.* Once the movant establishes that no genuine issue of material fact exists, the party opposing summary judgment must set forth specific facts indicating that there is a genuine issue in dispute. *Pierce v. Bank One–Franklin, NA* (1993), Ind.App., 618 N.E.2d 16, *trans. denied.* Even if the facts are not in dispute, summary judgment is inappropriate if conflicting inferences arise. *Pitcock v. Worldwide Recycling, Inc.* (1991), Ind.App., 582 N.E.2d 412; *ITT Commercial Fin. Corp. v. Union Bank and Trust* (1988), Ind.App., 528 N.E.2d 1149.

 A mechanic's lien was a remedy unknown at common law and is purely a statutory creation. *Premier Investments, supra; Potter Mfg. Co. v. A.B. Meyer & Co.* (1909), 171 Ind. 513, 86 N.E. 837. Provisions relating to the creation, existence or persons entitled to claim a mechanic's lien are to be narrowly construed since the lien rights created are in derogation of common law. *Puritan Eng'g Corp. v. Robinson* (1934), 207 Ind. 58, 191 N.E. 141. The burden is on the party asserting the lien to bring itself clearly within the strictures of the statute. *Premier Investments, supra; Puritan Eng'g Corp., supra.*

When Shackelford filed his "Notice of Intent to Hold Mechanic's Lien," the following statute was in effect:

> "Any person, firm, partnership or corporation who sells or furnishes on credit any material, labor or machinery, for the original construction of a single or double family dwelling for the intended occupancy of the owner upon whose real estate the construction takes place *to any contractor, subcontractor, mechanic or anyone other than the owner* or his legal representatives shall furnish said *owner* a written notice of the delivery or labor and the existence of

lien rights within sixty (60) days from the date of the first delivery or labor performed. The furnishing of such notice shall be a condition precedent to the right of acquiring a lien upon such real estate or upon the improvement constructed thereon."

Ind.Code 32–8–3–1 (the Mechanic's Lien Statute) (emphasis supplied).[2]

The record reflects that Shackelford sold material and labor on credit for the original construction of a single family dwelling. J. Lindsey, the builder who hired Shackelford, did not intend to occupy the residence. Although J. Lindsey held legal title to the property, it was the Rices who were the intended occupants. In determining that Shackelford's mechanic's lien was invalid, the trial court expressly relied upon *Mid America Homes, Inc. v. Horn* (1979), 272 Ind. 171, 396 N.E.2d 879, which defined the term "owner" as it is used in the Mechanic's Lien Statute.

In *Mid America,* the Horns entered into an oral agreement to purchase real estate from Mr. and Mrs. Arnold. Two days later, the Horns hired a builder to construct a home on the property. Approximately five days later, the builder contracted with Mid America for various materials. The order designated Horn as the buyer, and Mid America sent its invoice for the materials ordered in Horn's name. Despite the order and invoice, Mid America sent its statutory pre-lien notice to the Arnolds, who were still the record titleholders. Mr. Arnold received the notice three days later and returned it to Mid America after indicating on the notice that legal title had been transferred to the Horns. Mid America did not give pre-lien notice to the Horns.

---

2. While this case is governed by the above provisions of the statute, we observe that our legislature did not intend that a subcontractor furnish notice to unknown or concealed owners as evidenced by the following amendment, effective July 1, 1994:

> "Any person, firm, partnership, limited liability company, or corporation who sells or furnishes on credit any material, labor or machinery, for the original construction of a single or double family dwelling for the intended occupancy of

the owner upon whose real estate the construction takes place to any contractor, subcontractor, mechanic or anyone other than the owner or his legal representatives *shall furnish the owner of the real estate as named in the latest entry in the transfer books described in IC 6–1.1–5–4 of the county auditor, or if IC 6–1.1–5–9 applies, the transfer books of the township assessor with a written notice of the delivery or labor....*"

When Mid America was not paid, it filed a mechanic's lien and complaint against the Horns. The trial court ruled against Mid America, determining that there was no lien created on the real estate as a result of the failure to give the appropriate pre-lien notice. On appeal, this court reversed,[3] and our supreme court granted transfer reinstating the judgment of the lower court. The *Mid America* court observed as follows:

"In the case before us, notice to the Arnolds, as the record titleholder, could have served no purpose, as they were not the ones upon whose order the improvements were made; and, absent their agreement or equitable considerations estopping them from denying responsibility, neither of which were shown or claimed, their interest in the real estate could not have been subjected to the lien. It was of no concern to the Arnolds that the plaintiff was furnishing materials and labor for a dwelling to be occupied by the defendants. It is to their credit that they notified the plaintiff of its error; and it is unfortunate that the plaintiff took no steps in consequence thereof.

We hold that the 'owner' entitled to notice, under the provision of the statute under consideration, is the owner of that interest which may be subjected to the lien anticipated by the notice, in this case the defendants. Hence, absent equitable considerations estopping such persons from denying notice, those seeking the benefits of the lien may not rely upon the public records but are enjoined, at their peril, to give notice to such owner. This will preclude blind reliance upon a search of the record title." [Citations omitted].

*Id.* 396 N.E.2d at 883.

While the notice requirement announced above is seemingly quite broad, we distinguish that holding in light of the circumstances presented here and apply the equitable exception announced in *Mid America*. Unlike *Mid America*, where the subcontractor had actual knowledge of the Horns' interest, Shackelford had neither actual nor constructive notice of the Rices' involvement in the property. The Horns also became record title holders to the real property in *Mid America*, whereas the Rices never did so here. The notice provided in *Mid America* was not to the contractor, but rather, to third parties for whom it was of "no concern ... that the plaintiff was furnishing materials and labor." *Id.* 396 N.E.2d at 883. Here, J. Lindsey had notice of Shackelford's lien, substantial reasons to be concerned with the lien, and a duty to the Rices to inform them of the lien's existence. *See, e.g., Rhodes v. Selvage* (1919), 69 Ind. App. 533, 122 N.E. 352 (contractor is agent of owner).

The record demonstrates that legal title resulted in J. Lindsey's name, and the Rices did nothing publicly to make potential mechanic's lien holders aware of their interest in the real property. J. Lindsey was, at all relevant times, the legal owner of the real estate, and it was J. Lindsey who obtained a construction loan on the property and gave a construction mortgage on the real estate to the bank. Unlike the Horns in *Mid America*, the Rices possessed no apparent lienable interest in the property, and Shackelford could not have ascertained that anyone other than J. Lindsey had any interest. Under the circumstances, there was nothing further Shackelford could have done to preserve his lien. We also observe that in *Mid America*, the Horns had paid the contractor for his services. While the Rices knew of Shackelford's lien, they never paid Shackelford or J. Lindsey for the particular services or materials that were provided.

In light of the equitable considerations present in this case, we distinguish *Mid America* and conclude that the trial court erred in determining that the Rices were the "owners" of the property within the meaning of the Mechanic's Lien statute. It was improper to conclude as a matter of law that Shackelford's lien was void and invalid.

Judgment reversed.

DARDEN, J., concurs.

SULLIVAN, J., concurs in result.

---

**3.** *Mid America Homes, Inc. v. Horn* (1978), Ind. App., 377 N.E.2d 657.