**Edward FORD and Donna Ford and Mario Ribet and Constance Ribet, Appellants–Defendants,**

v.

**CULP CUSTOM HOMES, INC., Appellee–Plaintiff.**

No. 46A03–0002–CV–39.

Court of Appeals of Indiana.

July 14, 2000.

Brent E. Inabnit, Sopko, Nussbaum & Inabnit, Charles P. Rice, South Bend, Indiana, Attorneys for Appellants.

Stephen L. Eslinger, South Bend, Indiana, Attorney for Appellee.

## OPINION

KIRSCH, Judge

In this consolidated interlocutory appeal, Mario and Constance Ribet ("Mortgagees") and Edward and Donna Ford ("Homeowners") appeal the trial court's denial of their respective motions for summary judgment, presenting two separate issues for our review:

I. Whether a mechanic's lien is valid when the contractor filed suit to enforce the lien in a county other than that in which the real property is located.

II. Whether a general contractor may assert a mechanic's lien consisting of (1) sums owing to two subcontractors who provided materials to the project, but who themselves were precluded from filing liens, and (2) a claim for the general contractor's own contracting fee.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to Culp Custom Homes, Inc. ("Contractor"), the non-moving party, are that in April 1995, Homeowners entered into a cost-plus residential construction contract with Contractor. Under the contract, Contractor agreed to serve as general contractor to build a home in LaPorte County, Indiana, for Homeowners, and, in turn, Homeowners agreed to pay Contractor the total construction costs and an 8% contracting fee. Mortgagees, the parents of Homeowner Donna Ford, provided the financing for the home, and they recorded their mortgage on August 9, 1995, in the Office of the Recorder of LaPorte County, Indiana.

Construction began on May 30, 1995, and shortly thereafter several disputes arose between Homeowners and Contractor. By August 1995, Homeowners discharged Contractor, and Contractor terminated work on the home. On October 13, 1995, Contractor recorded in LaPorte County a Notice of Mechanic's Lien against the property in the amount of $47,486.30. *Record* at 19. The lien included sums due to Contractor for its contracting fee and sums due and owing to Henderson & Crull and Hass Wholesale, materialmen who supplied materials for the project more than sixty days prior to the filing of the Notice.

On October 31, 1995, Mortgagees served Contractor with a Notice to Commence Suit within thirty days pursuant to IC 32-8-3-10. On November 22 1995, Contractor filed a complaint in the St. Joseph Circuit Court asserting various claims, including the foreclosure of its lien, the only claim relevant to this appeal. On July 10, 1996, the St. Joseph Circuit Court transferred the case to the LaPorte Circuit Court, and on October 11, 1996, the LaPorte Circuit Court consented to the transfer.

Mortgagees and Homeowners each filed a motion for summary judgment on the foreclosure count of the complaint. The trial court denied the motions. Both Mortgagees and Homeowners now appeal. We entertain this consolidated appeal pursuant to the discretionary provisions of Ind. Appellate Rule 4(B)(6).

## DISCUSSION AND DECISION

### I. Standard of Review

A trial court's ruling on a motion for summary judgment comes before this Court "clothed with a presumption of validity." *Indiana Michigan Power Co. v. Runge*, 717 N.E.2d 216, 226 (Ind.Ct.App. 1999). When reviewing the denial of a summary judgment motion, we follow the same process as the trial court. *Premier Investments v. Suites of America, Inc.*, 644 N.E.2d 124, 127 (Ind.1994). Summary judgment is appropriate only when the designated evidentiary matter shows that there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law. Ind. Trial Rule 56(C); *id.* We will affirm the denial of summary judgment if it is sustainable on any legal theory or basis found in the evidentiary matter designated to the trial court. *Indiana Michigan Power Co.,* 717 N.E.2d at 227. As the parties appealing the denial of motions for summary judgment, Mortgagees and Homeowners bear the burden of persuading this court that the trial court's rulings were improper. *Id.*

## II. Venue

First, we address the denial of Homeowners' motion for summary judgment on the issue of whether Contractor holds a valid mechanic's lien when it failed to file suit to enforce its lien in the county in which the real estate is located within thirty days of receiving Notice from the Homeowners pursuant to IC 32–8–3–10.

■■■ At the heart of this appeal is a mechanic's lien. The historical origin and purpose of the mechanic's lien statutes was to make a property owner an involuntary guarantor of payments for the reasonable value of improvements made to real estate by the physical labor or materials furnished by laborers or materialmen. *Premier Investments,* 644 N.E.2d at 130. Thus, the core function of mechanic's lien laws is to prevent the inequity of a property owner enjoying the benefits of the labor and materials furnished by others without recompense. *Id.*

■■■ A mechanic's lien, being a remedy unknown at common law, is purely a statutory creation. *Shackelford v. Rice,* 659 N.E.2d 1142, 1145 (Ind.Ct.App.1996), *trans. denied.* Because the Indiana mechanic's lien statutes are in derogation of the common law, their provisions must be strictly construed. *Id.*

■■■ A mechanic's lien secures a debt owing to, among others, a contractor for work performed and materials supplied to a property. IC 32–8–3–1(a). In order to acquire a lien upon the property, the party seeking the lien must timely file a sworn statement of his intention to hold a lien in the recorder's office of the county in which the relevant real estate is located. IC 32–8–3–3. To enforce a lien, the lienholder must file suit to foreclose the lien on the property in the county in which the real estate is located within one year from the date on which the mechanic's lien was recorded. IC 32–8–3–6, entitled "Enforcement of lien," states in pertinent part:

"Any person having such lien may enforce the same by filing his complaint in the circuit or superior court of the county where the real estate or property on which the lien is so taken is situated, at any time within one (1) year from the time when said notice has been received for record by the recorder of the county; or, if a credit be given, from the expiration of the credit, and if said lien shall not be enforced within the time prescribed by this section, the same shall be null and void."

Our legislature has instituted a means by which an owner or any person having an interest in the property at issue may force the contractor or other lienholder to act sooner than the one-year limitation of IC 32–8–3–6. IC 32–8–3–10 allows the owner or other interested party, including mortgagees, to issue a Notice to Commence Suit to the lienholder, which triggers the commencement of a thirty-day period within which the lienholder must file suit or face the lien being voided. The statute states in relevant part:

"The owner of property upon which a mechanic's lien has been taken, or any person or corporation having an interest therein, including mortgagees and lienholders, may notify, in writing, the owner or holder of the lien to commence suit thereon and if he fails to commence such suit within thirty (30) days after receiving such notice, the lien shall be null and void, but nothing contained herein shall prevent the claim from being collected as other claims are collected by law."

IC 32–8–3–10.

Unlike IC 32–8–3–6, which expressly states that any person who desires to en-

force his mechanic's lien must file his complaint in the circuit or superior court in the county where the real estate is situated, IC 32–8–3–10 is silent as to where the lienholder must file suit. We must therefore determine whether IC 32–8–3–10 likewise imposes a requirement that suit to foreclose the lien, now required to be commenced within thirty days, must be filed in the county in which the property is located.

When construing a statute, we may not interpret a statute that is facially clear and unambiguous. *Rose & Walker, Inc. v. Swaffar,* 721 N.E.2d 899, 901 (Ind. Ct.App.2000), *trans. denied.* However, if a statute is ambiguous, we seek to ascertain and effectuate the intent of the legislature as shown by the whole act. *Id.; Greyhound Fin. Corp. v. R.L.C., Inc.,* 637 N.E.2d 1325, 1327 (Ind.Ct.App.1994); *Froberg v. Northern Indiana Constr., Inc.,* 416 N.E.2d 451, 454 (Ind.Ct.App.1981). Statutes relating to the same general subject matter are in pari materia and should be construed consistently and harmoniously, rather than in a manner which renders them conflicting. *Greyhound Fin. Corp.,* 637 N.E.2d at 1327.

IC 32–8–3–3, IC 32–8–3–6 and IC 32–8–3–10 all relate to the same subject matter, namely, mechanic's liens upon real property. Therefore, we must construe them consistently. IC 32–8–3–3 requires that the sworn statement of intention to hold the lien must be filed in the county where the real estate is located. IC 32–8–3–6 provides that any suit to enforce it must be brought in the county of the real property. IC 32–3–8–10 permits the landowner to press the lienholder to file suit promptly, within thirty days, or lose his mechanic's lien. It follows that IC 32–8–3–10, as the subsequent reference in the chapter, imposes the obligation of the preceding sections, IC 32–8–3–3 and IC 32–8–3–6, requiring that the lien be recorded and suit be filed in the county where the property is located. To conclude otherwise would leave us with conflicting provisions within the same chapter.

Contractor argues that even if we interpret IC 32–8–3–10 as we have, to require filing in the county of the property's location, that statute must yield to Ind. Trial Rule 75, which provides that if a proceeding is filed which should have been filed in another court, the court shall not dismiss the action, but rather transfer it to the proper court. We agree.

The starting point of our analysis is T.R. 75(D), which states:

"Any provision of these rules and any special or general statute relating to venue, the place of trial or the authority of the court to hear the case shall be subject to this rule, and the provisions of any statute fixing more stringent rules thereon shall be ineffective. No statute or rule fixing the place of trial shall be deemed a requirement of jurisdiction."

T.R. 75(A)(2) is consistent with our interpretation of IC 32–8–3–10 and provides that preferred venue on a claim to foreclose a lien on land is in the county in which the land is located.

T.R. 75(B) deals with the transfer of a case improperly filed. It states:

"Claim or proceeding filed in improper court. Whenever a claim or proceeding is filed which should properly have been filed in another court of this state, and proper objection is made, the court in which such action or proceeding is filed shall not dismiss the same, but shall order said cause transferred to the court in which it should have been filed. The person filing such claim or proceeding shall pay such costs as are chargeable upon a change of venue and the papers and records shall be certified to the court of transfer in like manner as upon change of venue. *Such action shall be deemed commenced as of the date of filing the claim in the original court.*"

T.R. 75(B) (emphasis added).

Here, Contractor failed to comply with IC 32–8–3–10 and T.R. 75(A)(2) when it

filed suit in St. Joseph County rather than LaPorte County. That error notwithstanding, T.R. 75(B) permits transfer of a case and, moreover, expressly provides that upon transfer the case be deemed commenced as of the date of filing in the original court. Thus, Contractor's complaint must be considered filed in LaPorte County as of November 22, 1995.

The trial court properly denied Homeowners' motion for summary judgment.

### III. MECHANIC'S LIEN

Mortgagees' appeal attacks the substance of Contractor's lien. Here, the lien consists of three elements: (1) $22,301.49 that Contractor owes to subcontractor Henderson & Crull for lumber supplied to the project, (2) $15,510.99 that Contractor owes to subcontractor Hass Wholesale for concrete supplied to the project, and (3) Contractor's own contracting fee. We must determine whether under those circumstances Mortgagees are entitled to judgment as a matter of law. We conclude they are not.

Mortgagees' argument is founded on the theory that Contractor did not personally perform work or furnish materials, and therefore cannot assert a mechanic's lien. Mortgagees' analysis is twofold: First, a contractor cannot assert a lien for work done by or materials supplied by someone other than the contractor, and second, the contracting fee, which Mortgagees characterize as profit, is not something for which a lien can be asserted under IC 32–8–3–1.

IC 32–8–3–1 provides in pertinent part:

"That contractors, subcontractors ... and all other persons performing labor or furnishing materials or machinery ... for the erection, altering, repairing or removing any house ... may have a

lien separately or jointly upon the house ... which they may have erected, altered, repaired, moved or removed or for which they may have furnished materials or machinery of any description, and, on the interest of the owner of the lot or parcel of land on which it stands or with which it is connected to the extent of the value of any labor done, material furnished, or either ..."

IC 32–8–3–1(a).

In this case, the two subcontractors who remain unpaid, Henderson & Crull and Hass Wholesale, failed to timely serve Homeowners with pre-lien notices as required by statute, and further failed to timely record mechanic's liens for their materials. Hence, argue Mortgagees, Contractor ought not be permitted to "backdoor" subcontractors' claims, when subcontractors were procedurally precluded from asserting the liens themselves.

Mortgagees' position presumes that Contractor is asserting lien rights on behalf of the subcontractors. However, we do not view Contractor as asserting a lien on anyone's behalf, other than its own. Under the terms of this contract, Contractor agreed to act as general contractor for the construction of Homeowners' home. Contractor was responsible for furnishing labor and materials for the project. *Record* at 25. As part of that obligation, Contractor controlled scheduling, ordering, and costs. *Record* at 26. Once materials were delivered to the project, Contractor became liable to the subcontractors for the cost of the materials and labor. *See* IC 32–8–3–9 [1]; *McCorry v. G. Cowser Constr., Inc.*, 636 N.E.2d 1273, 1278 (Ind.Ct.App. 1994) (applying personal responsibility statute where general contractor failed to pay subcontractor), *opinion adopted by*

---

[1] IC 32–8–3–9, the personal responsibility statute, allows a subcontractor to bring a cause of action against an owner of property if his employer, the contractor, defaults. It states in relevant part: "Subcontractor ... may give to the owner ... notice in writing particularly setting forth the amount of his claim and services rendered, for which his employer ... is indebted to him, and that he holds the owner responsible for the same; and the owner shall be liable for such claim, but not to exceed the amount which may be due, and may thereafter become due, from him to the employer ..."

*McCorry v. G. Cowser Constr., Inc.*, 644 N.E.2d 550 (Ind.1994).

The remedial nature of the lien statutes would not be served if a general contractor were precluded from asserting a lien that includes work done or material supplied by a subcontractor on a project for which the general contractor is liable under contract to the Homeowners, as well as to the subcontractors he hired in furtherance of the project. This principle was recognized long ago in *Moore–Mansfield Constr. Co. v. Indianapolis, N.C. & T. Ry. Co.*, 179 Ind. 356, 101 N.E. 296 (1913), which overruled then-existing black-letter mechanic's lien law: "The right conferred by a lien in favor of laborers is personal, and cannot be availed of by one who furnishes labor." *Id.* at 305 (citing JONES ON LIENS, § 1630 (2d Ed.)). *See Premier Investments*, 644 N.E.2d at 131, n. 5 (discussing importance of *Moore–Mansfield* as overruling prior cases that did not allow a construction company to acquire a mechanic's lien). *Moore–Mansfield* thus affirmed the proposition that the legislature, by expressly naming contractors in the mechanic's lien law, intended that a lien could be asserted, not only by the workmen employed by a contractor, but also by the contractor who employs them.

In addition to the sums owing to the two subcontractors, the lien encompasses the contracting fee. Mortgagors argue that the contracting fee is strictly "profit," a number not tied to work, but rather derived by mathematical calculation, and not something for which a lien may be asserted under IC 32–8–3–1. We disagree.

Our courts have held that a cost-plus contracting fee, as we have before us here, is lienable, so long as the contractor's work was more than merely supervisory in nature.[2] *See Premier Investments*, 644 N.E.2d at 129–30 (discussing *Mann v.*

*Schnarr*, 228 Ind. 654, 666, 95 N.E.2d 138, 142 (1950)). Contractor's lien states in relevant part:

> "The lien is intended to be held as a result of specific work done and/or materials supplied *by the Claimant*, which work was done on or materials supplied to the house located on the above described land. The Claimant did the following work and/or provided the lumber and other goods for construction of a house:"

*Record* at 19 (emphasis added). Thus, the lien specifically asserts that Contractor's mechanic's lien is for, or at least includes, work that Contractor personally performed.

While IC 32–8–3–1 does not expressly list "profit" as an item for which a mechanic's lien may be asserted, any claim for labor or materials reasonably includes some degree of profit. Operating expenses, such as obtaining the supplies and delivering the product, are inseparably connected to the "cost" of the materials, and constitute labor and materials within the meaning of the mechanic's lien statutes. *Mann*, 228 Ind. at 664, 95 N.E.2d at 142 (discussing *Wells v. Christian*, 165 Ind. 662, 665, 76 N.E. 518, 519 (1906), and *Lytle, Campbell & Co. v. Somers, Fitler & Todd Co.*, 276 Pa. 409, 120 A. 409 (1923)). We decline to require that any person or entity asserting a mechanic's lien must exclude from that lien any monies that constitute profit to the claimant.

Because we conclude that under the facts of this case Contractor is entitled to assert its mechanic's lien, the trial court properly denied Mortgagees' motion for summary judgment.

Affirmed.

BAKER, J., and RILEY, J., concur.

---

2. Whether the types of activities that Contractor performed constitute "labor" within the meaning of IC 32–8–3–1 as defined in *Premier Investments* is not before us today and we decline to address that issue.